931 P.2d 580

Bradford L. GRAY, Petitioner–Appellant,

v.

ADMINISTRATIVE DIRECTOR OF THE
COURT, STATE OF HAWAI'I,
Respondent–Appellee.

No. 18401.

Supreme Court of Hawai'i.

Jan. 30, 1997.

Arthur E. Ross, on the briefs, Honolulu, for petitioner-appellant Bradford L. Gray.

Girard D. Lau and Steven S. Michaels, Deputy Attorneys General, on the briefs, Honolulu, for respondent-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

1. Effective June 29, 1995, various provisions of HARDLA were amended by 1995 Haw. Sess. L. Act 226 [hereinafter, "1995 Act 226"], §§ 2, 3, 4, 5, 6, 7, 11, and 12 at 583–86, 589. Effective June 18, 1996, HARDLA was further amended by 1996 Haw. Sess. L. Act 230 [hereinafter, "1996 Act 230"], §§ 1 through 6 at 526–28. The amendments are not directly relevant to the issues before us in the present appeal.

2. 1995 Act 226 amended HARDLA, including HRS § 286–258, by lowering the relevant alcohol concentration from .10 to .08. 1995 Act 226, §§ 3, 4, 5, and 6 at 583–85. "Alcohol concentration" means "either grams of alcohol per one hundred milliliters or cubic centimeters of blood or grams of alcohol per two hundred ten liters of breath." HRS § 286–251 (Supp.1996). The downward revision of the relevant alcohol concentration is not applicable to the present appeal.

3. HRS § 286–251 (Supp.1996) defines "Director" to mean "the administrative director of the courts or *any* other *person* within the judiciary *appointed by the [D]irector to conduct administrative reviews or hearings* or [to] carry out other functions relating to administrative revocation under [HARDLA]." (Emphasis added.) Neither 1995 Act 226 nor 1996 Act 230 amended the definition. Hereinafter in this opinion, the term "Director" will be used interchangeably with "Administrative Review Officer" in connection with HRS § 286–258 (1993), *see infra* note 6, and with "ADLRO hearing officer" in connection with HRS § 286–259 (Supp.1996), *see infra* note 7.

4. HRS § 286–261 (1993) provided in relevant part:

**Effective date and period of administrative revocation; criteria.** (a) ... Except as provided in section 286–264[, *see infra* note 21], ... no conditional permit shall be issued during the administrative revocation period.

(b) The periods of administrative revocation which *may* be imposed under this part are as follows:

LEVINSON, Justice.

The petitioner-appellant Bradford L. Gray appeals the decision and order of the District Court of the First Circuit affirming the administrative revocation of his driver's license under the rubric of the Hawai'i Administrative Revocation of Driver's License Act (HARDLA), Hawai'i Revised Statutes (HRS) ch. 286, part XIV (1993).[1] In accordance with HRS § 286–258 (1993),[2] an Administrative Review Officer, appointed by the respondent-appellee Administrative Director of the Courts (Director),[3] revoked Gray's driver's license for life, pursuant to HRS § 286–261(b)(4) (1993),[4] following his fourth "alcohol

(1) Three months, if the arrestee's driving record shows no prior alcohol enforcement contacts during the five years preceding the date of arrest;

(2) One year if the arrestee's driving record shows one prior alcohol enforcement contact during the five years preceding the date of arrest;

(3) Two years if the arrestee's driving record shows two prior alcohol enforcement contacts during the seven years preceding the date of arrest;

(4) For life if the arrestee's driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest; or

(5) For arrestee's under the age of eighteen years, the period remaining until the arrestee's eighteenth birthday, or for the appropriate revocation period provided in paragraphs (1) to (4) or in subsection (c), whichever is longer.

(c) The license of an arrestee who refuses to be tested after being informed of the sanctions of this part *shall* be revoked under subsection (b)(1), (2), or (3) for a period of one year, two years, and four years, respectively.

....

(Emphasis added.) 1995 Act 226 effected minor grammatical changes to HRS §§ 286–261(b) and (c). 1995 Act 226, § 7 at 585–86. 1996 Act 230 did not affect HRS § 286–261.

HRS § 286–251 (Supp.1996) defines "alcohol enforcement contact" as follows:

"Alcohol enforcement contact" means any administrative revocation ordered pursuant to [HARDLA]; any driver's license suspension or revocation imposed by this or any other state or federal jurisdiction for refusing to submit to a test for alcohol concentration in the person's blood; or any conviction in this or any other state or federal jurisdiction for driving, operating, or being in physical control of a motor vehicle while having an unlawful concentration of alcohol in the blood, or while under the influence of alcohol.

enforcement contact" within the ten years preceding the date of his arrest for DUI that precipitated this appeal. The administrative revocation was subsequently affirmed by a hearing officer of the Administrative Driver License Revocation Office of the Judiciary of the State of Hawai'i (hereinafter, "ADLRO"). Gray filed a timely request for judicial review, as a result of which the district court affirmed Gray's lifetime license revocation. Gray then filed a timely appeal to this court.

On appeal, Gray raises a number of related points of error. First, with respect to HRS § 286–261(b), see supra note 4, Gray contends that: (1) the statute (a) operates as an unconstitutional ex post facto law and (b) is ambiguous and was erroneously interpreted both by the ADLRO hearing officer and by the district court; and (2) HRS § 286–261(b)(4) violates his right to due process of law by virtue of its allegedly "retroactive" application. Second, Gray urges that both the Director and the district court committed abuses of discretion in revoking Gray's driver's license for life.

▮▮▮▮ Gray's arguments regarding the constitutionality, interpretation, and operation of HRS § 286–261(b) are without merit.[5]

Moreover, for the reasons discussed below, we hold: (1) that the Director lacked the discretion to impose any period of administrative revocation upon Gray other than "for life"; and (2) that the district court was therefore correct in affirming the Director's decision and order. Accordingly, we affirm the judgment of the district court affirming Gray's lifetime administrative driver's license revocation.

## I. BACKGROUND

On May 5, 1994, Gray was arrested for driving under the influence of intoxicating liquor (DUI) and driving an automobile without no-fault insurance, after making a U-turn on Lē'ahi Avenue, located in the City and County of Honolulu, despite two recent admonitions by police that he was intoxicated and would face arrest if he began to drive. As required by HRS §§ 286–254 and –255 (1993), the arresting officer explained HARDLA to Gray and apprised him of the consequences of refusing to be tested for blood alcohol concentration. Gray agreed to a breath test, which reflected a blood alcohol concentration of 0.285. The arresting officer confiscated Gray's driver's license pursuant

---

Neither 1996 Act 230 nor 1995 Act 226 affected the definition of "alcohol enforcement contact." See id., § 2 at 583.

5. Gray's contentions that HRS § 286–261(b) is an illegal ex post facto law and violates his constitutional right to due process of law by virtue of its "retroactivity" are similar to the attack leveled in State v. Freitas, 61 Haw. 262, 602 P.2d 914 (1979), against statutes that authorize the imposition of enhanced sentences on criminal recidivists based on prior convictions. Just as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one," id. at 276, 602 P.2d at 924 (citation and quotation marks omitted), "is not an additional penalty for a prior crime," id. (emphasis added), and is therefore "not violative of the constitutional prohibition against the enactment of ex post facto legislation," id. (footnote omitted), so a more prolonged administrative revocation period because of past alcohol enforcement contacts is neither retroactive nor ex post facto in nature. Moreover, we have held, both explicitly and implicitly, that ADLRO proceedings are civil in nature. Norton v. Administrative Director of Court, State of Hawai'i, 80 Hawai'i 197, 200, 908 P.2d 545, 548 (1995), reconsideration denied, 80 Hawai'i 357, 910 P.2d 128 (1996); Kernan v. Tanaka, 75 Haw. 1, 15–17 & n. 8, 856 P.2d 1207, 1215–1216 & n. 8 (1993), cert. denied,

510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). Consequently, being civil in nature, ADLRO proceedings do not apply to constitutional ex post facto clauses, which relate only to "punitive legislation," i.e., "prosecutions for crime." See Galvan v. Press, 347 U.S. 522, 531 & n. 4, 74 S.Ct. 737, 742–43 & n. 4, 98 L.Ed. 911, reh'g denied, 348 U.S. 852, 75 S.Ct. 17, 99 L.Ed. 671 (1954); Shumate v. West Virginia Dep't of Motor Vehicles, 182 W.Va. 810, 392 S.E.2d 701, 705 (1990).

Gray's argument that HRS § 286–261(b) is ambiguous, such that HRS §§ 286–261(b)(1) and –261(b)(4), see supra note 3, both apply to his circumstances, is creative but likewise without merit. We agree with the district court that "the language [of HRS § 286–261(b)] is not laid out in that fashion." Although, for the reasons discussed infra, HRS § 286–261(b) is not free of ambiguity, there is neither ambiguity nor inconsistency in the plain language of HRS § 286–261(b)(4), insofar as it unmistakably designates "for life" as the period of administrative driver's license revocation for any person who has three or more prior alcohol enforcement contacts within the ten years preceding the date of the current arrest, regardless of the number of such contacts that may have occurred within any shorter period of time.

to HRS § 286–255 and gave him a thirty-day permit.

An administrative review, mandated under HRS § 286–258,[6] was conducted on May 10, 1994. The Administrative Review Officer revoked Gray's license for life on the grounds that: (1) Gray's blood alcohol concentration was above 0.10; (2) the sworn statements from law enforcement officials were substantiated by the case file; (3) the arresting officers had reasonable suspicion to stop Gray's vehicle; and (4) the police had probable cause to believe that Gray drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor.

Pursuant to HRS § 286–259,[7] Gray requested an administrative hearing, which oc-

---

6. HRS § 286–258 (1993) provided in relevant part:

> **Administrative review; procedures.** (a) The [D]irector shall automatically review the issuance of a notice of administrative revocation, and *a written decision administratively revoking the license* or rescinding the notice of administrative revocation shall be mailed to the arrestee no later than eight days after the date the notice was issued.
>
> ....
>
> (c) In conducting the administrative review, the [D]irector shall consider:
> (1) Any sworn or unsworn statement or other evidence provided by the arrestee;
> (2) The breath or blood test results, if any; and
> (3) The sworn statements of the law enforcement officials, and other evidence or information required by section 286–257.
> (d) The [D]irector *shall administratively* revoke the arrestee's driver's license if the [D]irector determines that:
> (1) There existed reasonable suspicion to stop the motor vehicle ...;
> (2) There existed probable cause to believe that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor; and
> (3) The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having a blood alcohol concentration of 0.10 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.
> ....
> (f) If the [D]irector administratively revokes the arrestee's driver's license, the [D]irector shall mail to the arrestee *a written decision stating the reasons for the administrative revocation.* The decision shall also indicate that the arrestee has five days from the date the decision is mailed to request an administrative hearing *to review the [D]irector's decision.* ...

(Emphasis added.) As indicated *supra* at note 2, 1995 Act 226 amended the foregoing language only with respect to the relevant alcohol concentration. 1995 Act 226, § 5 at 585. 1996 Act 230 amended HRS §§ 286–254(e) and (f), –258(f), and –259(a) to accord an arrestee six days—rather than five—to request administrative review. 1996 Act 230, §§ 1 through 3 at 526–27. 1996 Act 230 further effected an amendment to HRS § 286–258(g) that is immaterial herein.

7. HRS § 286–259 (1993) provided in relevant part:

> **Administrative hearing.** (a) If the [D]irector administratively revokes the arrestee's license after administrative review, the arrestee may request an administrative hearing *to review the decision* .... The hearing shall be scheduled....
> ....
> (c) The arrestee may be represented by counsel.
> (d) *The [D]irector shall* conduct the hearing and have authority to:
> (1) Administer oaths and affirmations;
> (2) Examine witnesses and take testimony;
> (3) Receive and determine the relevance of evidence;
> (4) Issue subpoenas, take depositions, or cause depositions or interrogatories to be taken;
> (5) Regulate the course and conduct of the hearing; and
> (6) *Make a final ruling.*
> (e) The [D]irector shall affirm the administrative revocation only if the [D]irector determines that:
> (1) There existed reasonable suspicion to stop the motor vehicle ...;
> (2) There existed probable cause to believe that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor; and
> (3) The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having a blood alcohol concentration of .10 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.
> (f) The arrestee's prior alcohol enforcement contacts shall be entered into evidence.
> ....
> (i) *The [D]irector's decision shall be* rendered in writing and mailed to the arrestee....

curred on May 27, 1994. The ADLRO hearing officer sustained the decision of the Administrative Review Officer and entered findings on the record.

On June 28, 1994, pursuant to HRS § 286-260,[8] Gray appealed to the district court from the ADLRO hearing officer's decision on the grounds that the Director had exceeded his constitutional or statutory authority, errone-ously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, and made a determination unsupported by the evidence. The district court rejected Gray's arguments and affirmed the administrative revocation in a judgment entered on August 11, 1994.

Gray filed a timely appeal to this court from the district court's judgment.[9]

---

If the decision sustains the administrative revocation, the [D]irector shall mail to the arrestee a written decision *indicating the duration of the administrative revocation* ....
(Emphasis added.) 1995 Act 226 amended HRS § 286-259(e) by lowering the relevant alcohol concentration from .10 to .08. 1995 Act 226, § 6 at 585. *See supra* note 2. In addition, 1996 Act 230 amended HRS § 286-259(a) to expand the period within which an arrestee may request administrative review of his or her driver's license revocation. *See supra* note 6.

**8.** HRS § 286-260 (1993) provides in relevant part:

**Judicial review; procedure.** (a) If the [D]irector sustains the administrative revocation after administrative hearing, the arrestee may file a petition for *judicial review* .... The petition shall be filed with the clerk of the district court in the district in which the offense occurred and shall be accompanied by the required filing fee for civil actions.... The petition shall state with specificity the grounds upon which the petitioner seeks reversal of the administrative revocation.

(b) The court shall schedule the *judicial review* as quickly as practicable, and the review *shall be on the record of the administrative hearing* without taking of additional testimony or evidence. If the petitioner fails to appear without just cause, the court shall affirm the administrative revocation.

(c) The sole issues before the court shall be *whether the [D]irector exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.*
(Emphasis added.)
1995 Act 226 did not amend HRS § 286-260. 1996 Act 230, however, added HRS § 286-260(d), which provides prospectively that "[t]he court shall not remand the matter back to the [D]irector for further proceedings consistent with its order." 1996 Act 230, §§ 4 and 7 at 528. The legislature's addition of HRS § 286-260(d) would appear to be responsive to *Miller v. Tanaka*, 80 Hawai'i 358, 910 P.2d 129 (App.1995), *cert. denied*, 80 Hawai'i 357, 910 P.2d 128 (1996), which contained the following analysis of the Intermediate Court of Appeals:

With respect to whether the district court may remand [a HARDLA proceeding] to the ADLRO, we note that HRS § 286-260 ... does not limit the district court's disposition on judicial review to affirmance or reversal other than the ... provision in HRS § 286-260(b)[] that "the court shall affirm the administrative revocation" if a petitioner fails to appear without just cause.

... In the absence of a specific provision in [HARDLA] limiting the manner of the district courts' dispositions, we conclude that there was no legislative intent to limit ... dispositions, such as by remand, ordinarily available to the reviewing courts. We hold, therefore, that the district court is vested with jurisdiction ... to remand [HARDLA proceedings] to the ADLRO for proceedings consistent with our opinion.
*Miller*, 80 Hawai'i at 371, 910 P.2d at 142 (citation omitted).

**9.** HRS § 602-5(1) [(1993)] gives the supreme court appellate jurisdiction over cases "properly brought before it on any appeal allowed by law from any other court or agency[.]" Furthermore, HRS § 641-1(a) [(1993)] provides in part that "[a]ppeals shall be allowed ... from all final judgments, orders, or decrees of circuit and district courts ... *except as otherwise provided by law*." (Emphasis added.) Thus, any district court final judgment, order, or decree may be appealed to the supreme court, unless a specific statute provides otherwise. Arguably, HRS § 286-260 provides an exception to the general appealability of district court judgments by providing that an appeal from the administrative hearing decisions shall be taken to the district court. We conclude, however, that the omission of language specifically providing [for] further appeal to this court does not signal finality at the district court level. This is because HRS § 286-260 makes no attempt, by its own terms, to limit the general right of appeal from all final district court judgments as set out in HRS § 641-1(a).

We ... conclude that, had the legislature intended to limit an aggrieved person's rights, it would have included in [HARDLA] specific statutory language terminating a further appeal. Thus, we hold that, pursuant to HRS §§ 602-5(1) and 641-1(a), jurisdiction properly lies in this court to hear and determine appeals from district court judgments after an administrative hearing. *Kernan*, 75 Haw. at 16-17, 856 P.2d at 1215-16 (some brackets and ellipsis points in original and some added).

## II. STANDARDS OF REVIEW

■ "The interpretation of a statute is a question of law reviewable *de novo.*" *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citation omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied,* 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied,* 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

■ Judicial review of a decision of the Director regarding the revocation of a driver's license is governed by HRS § 286–260, *see supra* note 8, and is limited to the record of the administrative hearing and the questions whether the Director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record. *Kernan v. Tanaka,* 75 Haw. 1, 20, 856 P.2d 1207, 1217 (1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994).

■ "Review of a decision made by [a] court upon its review of an [administrative] decision is a secondary appeal. The standard of review is one in which this court must determine whether the court [under review] was right or wrong in its decision[.]" *University of Hawai'i Professional Assembly v. Tomasu,* 79 Hawai'i 154, 157, 900 P.2d 161, 164 (1995) (citations and quotation signals omitted).

## III. DISCUSSION

A. *The Positions Of The Parties And The Necessity Of Meaningful Appellate Review*

As indicated in section I. of this opinion, *supra,* and pursuant to HRS § 286–260, Gray appealed—unsuccessfully—to the district court for judicial review of the Director's lifetime administrative revocation of his driver's license on the grounds, *inter alia,* that the Director had acted in an arbitrary or capricious manner and committed an abuse of discretion. On further appeal to this court, *see supra* note 9, Gray argues that the Director, through the Administrative Review Officer and the ADLRO hearing officer, committed an abuse of discretion by failing to consider or articulate any reasons for the particular period of administrative revocation imposed pursuant to HRS § 286–261(b). Gray's contention presupposes, of course, that the Director possessed the statutory discretion to impose a period of administrative revocation upon him, in accordance with HRS § 286–261(b)(4), other than "for life."

In this connection, we have held in the past that every decision governed by the Hawai'i Administrative Procedure Act (HAPA), HRS ch. 91, must explicate its findings and decisions in writing. "The parties and the court should not be left to guess, with respect to *any material question of fact,* or to any group of minor matters that may have cumulative significance, the precise finding of the [administrative] agency." *In re Application of Terminal Transp., Inc.,* 54 Haw. 134, 139, 504 P.2d 1214, 1217 (1972) (emphasis added). *See also In re Application of Hawaii Elec. Light Co., Inc.,* 60 Haw. 625, 642, 594 P.2d 612, 623 (1979) ("[F]indings of *ultimate* facts must be supported by findings of *basic* facts which in turn are required to be supported by the evidence in the record." (Citations and footnote omitted.) (Emphasis in original.)).

■ We recognize that administrative license revocation proceedings conducted pursuant to HRS §§ 286–258 and –259, *see supra* notes 6 and 7, are not governed by the

---

Although the legislature amended HRS § 286–260 in 1996 to limit the dispositional options available upon judicial review of an administrative driver's license revocation, *see supra* note 8, it has not disturbed the view expressed in *Kernan* regarding this court's statutory authority to hear appeals from judgments entered by the district courts following HARDLA hearings. "[W]here the legislature fails to act in response to our statutory interpretation, the consequence is that the statutory interpretation of the court must be considered to have the tacit approval of the legislature and the effect of legislation." *State v. Dannenberg,* 74 Haw. 75, 83, 837 P.2d 776, 780, *reconsideration denied,* —— Haw. ——, 843 P.2d 144 (1992).

"contested case" requirements of HAPA. HRS § 286–263 (1993).[10] Nevertheless, as the Intermediate Court of Appeals recently observed, "[t]here are very practical reasons for requiring an [administrative] agency's findings and conclusions upon all material issues of fact, law, *or discretion* to be stated in its decisions." *Rife v. Akiba*, 81 Hawai'i 84, 87, 912 P.2d 581, 584 (App.1996) (emphasis added).

> The reasons have to do with *facilitating judicial review*, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearing and *judicial review*, and keeping [administrative] agencies within their jurisdiction.
>
> ... [T]he most prominent reason ... is the facilitation of judicial review.

*Id.* (quoting K. Davis, *Administrative Law Treatise* § 16.05 (1958) (footnotes omitted)) (emphasis added).

■ Therefore, even though HARDLA does not, as a facilitator of judicial review, expressly require a written record of the reasons forming the basis for determining the period or term of an arrestee's administrative driver's license revocation, we believe that HRS §§ 286–258, –259, –260 and –261, *see supra* notes 4, 6, 7, and 8, imply such a requirement; the requisite scope of the written record depends, of course, upon: (1) whether HARDLA accords the Director *any* discretion to depart—in either an upward or downward manner—from the periods (or any of them) enumerated in HRS § 286–261(b); [11] and (2) whether, if HARDLA authorizes only an upward departure, the Director actually opts to depart from the enumerated period applicable to the class of persons to which the arrestee belongs.[12]

In stark contrast to Gray's position, the Director argues on appeal that, "just as a judge sentencing a criminal defendant to a certain penalty that is within the range of authorized punishment need not state the reasons why he [or she] picked a particular

10. HRS 286–263 (1993) provides:

> **Administrative procedure act.** Neither the administrative review nor the administrative hearing provided under this part shall be subject to the contested case requirements of chapter 91. The availability of administrative review of an order of administrative revocation shall have no effect upon the availability of judicial review under this part.

11. In other words, if HARDLA does not accord the Director any discretion to depart from the periods of administrative revocation enumerated in HRS § 286–261(b), *see supra* note 4, the requisite written record would consist, as in this case, of a determination that the HRS § 286–258(d) criteria have been satisfied, *see supra* note 6, and a recitation that the arrestee's driving record showed that he or she falls within the class of persons enumerated in the relevant subsection of HRS § 286–261(b) or in HRS § 286–261(c).

12. For example, if an arrestee's driving record showed two prior alcohol enforcement contacts during the seven years preceding the date of arrest, thereby placing the arrestee within the ambit of HRS § 286–261(b)(3), *see supra* note 4, and the Director imposed a *two-year* administrative license revocation, there would be little utility in requiring the Director to articulate in writing why he or she did not order an administrative revocation for a *longer* period. Certainly, the arrestee would have suffered no prejudice by virtue of the Director's failure to explain why the "default mode" was not exceeded, and

meaningful appellate review would in no way be impaired.

On the other hand, we have stated in the past that one of the purposes of administrative revocation under HARDLA is the "protect[ion of] the public interest by removing potentially threatening driver's from our state's roadways[.]" *State v. Toyomura*, 80 Hawai'i 8, 17, 904 P.2d 893, 902 (1995). Thus, a discretionary *upward* departure on the Director's part from a "default mode" enumerated in HRS § 286–261(b) would be analogous to the discretionary imposition of an extended term of imprisonment, pursuant to HRS §§ 706–661 (1993) and –662 (Supp.1996), determined to be "necessary for the protection of the public" in a criminal case. In this connection, we have held that,

> [i]n order to engage in meaningful review of a sentencing court's decision without involving ourselves unduly in the exercise of the court's discretion, we require the sentencing court to "state on the record its reasons for determining that commitment of the defendant for an extended term is necessary for [the] protection of the public and ... [to] enter into the record all findings of fact which are necessary to its decision."

*State v. Okumura*, 78 Hawai'i 383, 413, 894 P.2d 80, 110 (1995) (quoting *State v. Tamura*, 63 Haw. 636, 639, 633 P.2d 1115, 1118 (1981)) (ellipsis points in original). The *Okumura* rationale would apply equally to "extended" periods of administrative revocation under HRS § 286–261(b).

level of punishment within the range, ... there is no reason why the [Director], authorized to impose a lifetime revocation, must state why he [or she] imposed the full lifetime revocation." [13]

The foregoing argument, however, does not comport with the case law of this court. Indeed, within the context of criminal cases, we have recently noted that:

"The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent *abuse of discretion* or, unless applicable statutory or constitutional commands have not been observed." *State v. Valera*, 74 Haw. 424, 439, 848 P.2d 376, 383, *reconsideration denied*, 74 Haw. 650, 853 P.2d 542 (1993). In other words, *while a sentence may be authorized by a constitutionally valid statute, its imposition may be reviewed for plain and manifest abuse of discretion.*

Admittedly, the determination of the existence of clear abuse is a matter which is not free from difficulty[,] and each case in which abuse is claimed must be adjudged according to its own peculiar circumstances. Generally, to constitute an abuse[,] it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

**13.** The Director's position seems to assume, *arguendo*, that the various subsections of HRS § 286–261(b), *see supra* note 4, each authorize the imposition of a "range" of periods of administrative revocation.

**14.** We recognize that the administrative revocation of a driver's license does not serve the identical purposes as sentencing following a criminal conviction. *See supra* note 5; *see also Toyomura*, 80 Hawai'i at 18, 904 P.2d at 903 ("[T]he Administrative Revocation Program, including the ADLRO hearing mechanism, is not 'punitive' by its very nature, but rather serves ... legitimate, nonpunitive, and purely remedial functions[.]" (Citation and quotation marks omitted.) (Some brackets added and some deleted.)); *Higa*, 79 Hawai'i at 6, 897 P.2d at 933 ("[T]he purpose of the administrative revocation process is not to 'punish' ...; it is to safeguard the public and reduce traffic fatalities caused by those driving while under the influence of alcohol."). Unlike administrative revocation under HARDLA, the

*State v. Kumukau*, 71 Haw. 218, 227–28, 787 P.2d 682, 688 (1990) (citations and internal quotation marks omitted). *See also State v. Murray*, 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980).

*In order to facilitate appellate review for abuse of a trial court's sentencing discretion, and "[w]henever a defendant is qualified for sentencing alternatives and the sentence imposed is unsatisfactory to the defendant, we strongly encourage and recommend that ... the sentencing court ... state its reasons for imposing the particular sentence." State v. Lau*, 73 Haw. 259, 265, 831 P.2d 523, 526 (1992).

*State v. Gaylord*, 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995) (brackets and ellipsis points in original) (emphasis added).

We believe that the policy considerations expressed in *Gaylord* potentially apply with equal force to the Director's decisions regarding periods of administrative driver's license revocations imposed pursuant to HRS § 286–261(b). As discussed above, the need for a record adequately reflecting the Director's reasons for determining these periods is particularly acute *if* HARDLA vests in the Director the discretion to depart from the "default modes" enumerated in the various subsections of HRS § 286–261(b). Such discretion, if completely unfettered, would raise substantial due process concerns.[14] As we held in the context of criminal sentencing,

objectives of criminal sentencing, as reflected in HRS § 706–606(2) (1993), are to strike the appropriate balance of (1) "just punishment" for the offense, (2) adequate deterrence to criminal conduct, (3) incapacitation of the defendant for the protection of the public, and (4) rehabilitation of the defendant. *Gaylord*, 78 Hawai'i at 147–48 & nn.33–36, 890 P.2d at 1187–88 & nn.33–36.

However, this court has recognized that a "driver's license is a constitutionally protected interest and due process must be provided before one can be deprived of his or her license. Although driving is a 'privilege' rather than a constitutional 'right,' once conferred, a license becomes a constitutionally protected property interest." *Kernan*, 75 Haw. at 21–22, 856 P.2d at 1218 (citations omitted); *see also Toyomura*, 80 Hawai'i at 21, 904 P.2d at 906. In considering the due process ramifications of administrative driver's license revocation, "[w]e ... consider the possible length of [the] deprivation." *Kernan*, 75 Haw. at 25, 856 P.2d at 1220.

unguided sentencing discretion exposes a convicted defendant to arbitrary and capricious government action.... What process is due to the defendant may be determined only upon a balancing of the interests of the defendant and the state, but the state does not have an interest in sentencing the defendant without any guarantees whatever against arbitrary and capricious action by the state's agent.

*State v. Huelsman,* 60 Haw. 71, 88–89, 588 P.2d 394, 405 (1978).

Because of the necessity that a HARDLA record facilitate, rather than impede, judicial review pursuant to HRS § 286–260, *see Rife,* 81 Hawai'i at 87, 912 P.2d at 584, and because due process concerns would preclude the unfettered exercise of discretion (if, indeed, HARDLA accords any) in determining the term of an arrestee's administrative driver's license revocation, it therefore follows that the administrative record in this case must adequately reflect the Director's reasons for revoking Gray's driver's license "for life." Accordingly, we look to that administrative record to ascertain whether it does.

Tracking verbatim the language of HRS §§ 286–258(d), –259(e), and –261(b)(4), the Director entered the following decision and order:

1. The Director concludes that there existed reasonable suspicion to stop the motor vehicle driven by [Gray].

2. The Director concludes there existed probable cause, the physical signs of intoxication and the failing of the field sobriety tests, to believe that [Gray] drove, operated, or was in actual physical control of the motor vehicle while under the influence of liquor.

3. The Director concludes, by a preponderance of the evidence, that [Gray] drove, operated, or was in actual physical control, of the motor vehicle while under the influence of intoxicating liquor.

4. [Gray] had a blood alcohol content of .10% or more.

5. [Gray's] ten (10) year driving record preceding the date of arrest May 4, 1994 shows three (3) prior alcohol enforcement contacts, as defined in HRS Section 286–251.

6. Pursuant to HRS Section 286–261, the period of revocation imposed on [Gray] is a period of **LIFE.**

(Emphasis in original.)

There is no question that the foregoing "conclusions" were adequately supported by the administrative record in this case. Moreover, Gray does not dispute that he had three prior alcohol enforcement contacts within the ten years preceding the arrest that precipitated the administrative revocation of his driver's license in the present matter. Thus, pursuant to HRS § 286–261(b)(4), the Director clearly had the statutory authority to revoke Gray's driver's license "for life." *See supra* note 4. Accordingly, if HARDLA *mandates* the period of administrative revocation enumerated in HRS § 286–261(b)(4), then the administrative record—in its present form—is as complete as it can be and, as such, is susceptible to meaningful appellate review. On the other hand, if, on the record before him, HARDLA accorded the Director

[W]hen prompt post deprivation review is available for correction of administrative error, *we have generally required* no more than *that* the predeprivation *procedures* used be designed to *provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be.* The fact that [HARDLA] provides for a *predeprivation review* and hearing ... *allows the arrestee to correct any mistakes that may have been made by the [D]irector.*
...
 ....
The legislature has chosen to provide an arrestee with an administrative review and hearing prior to the revocation of his or her [driver's] license. *These procedures provide*

*sufficiently reliable results to protect against erroneous revocations and satisfy due process concerns.*
*Id.* at 27, 29, 856 P.2d at 1220–21 (citation and quotation mark omitted) (some emphasis added and some deleted). *If* HARDLA vests the Director with discretion to impose a term of administrative revocation other than the periods enumerated in HRS § 286–261(b), and *if* the administrative record in a given case is silent with respect to the reasons why the Director has done so, then there would be no "reliable basis," reasonable or otherwise, for "correct[ing] any mistakes that may have been made by the [D]irector" via the judicial review authorized by HRS § 286–260. *See supra* notes 8, 9, and 12.

*any* discretion regarding the period of Gray's administrative revocation, then, as the appellate court, we would be "left to guess," *see In re Application of Terminal Transp.*, 54 Haw. at 139, 504 P.2d at 1217, the reasons why the Director opted for a lifetime revocation of Gray's driver's license, thereby hamstringing meaningful appellate review. *See supra* note 14.

B. *Periods Of Administrative Driver's License Revocation Under HRS §§ 286-261(b) and -261(c), Statutorily Authorized Administrative Discretion, Rules Of Statutory Construction, And The Relevant Legislative History*

We therefore address the question on which the outcome of the present appeal turns, namely, whether and to what extent HARDLA accords the Director any discretion to deviate from the periods of administrative revocation enumerated in HRS § 286-261(b).

1. *The relevant rules of statutory construction as applied to HRS §§ 286-261(b) and -261(c) and the ambiguity of "may" and "shall"*

In interpreting HARDLA's provisions, we must, of necessity, observe some established rules of statutory construction.

... When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.[15]

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1-15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Toyomura,* 80 Hawai'i at 18-19, 904 P.2d at 903-04 (citations and internal quotation signals omitted) (some brackets in original, some added, and some omitted). *See also Lara v. Tanaka,* 83 Hawai'i 24, 26-27, 924 P.2d 192, 194-95 (1996). "Furthermore, the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." *State v. Griffin,* 83 Hawai'i 105, 108 n. 4, 924 P.2d 1211, 1214 n. 4 (1996) (quoting *State v. Malufau,* 80 Hawai'i 126, 137, 906 P.2d 612, 623 (1995) (citations and internal quotation marks omitted)) (brackets and internal quotation marks omitted). *See also* HRS § 1-15(3) (1993) ("Every construction which leads to an absurdity shall be rejected.").

Applying the foregoing principles,

we must read the provisions of HRS § 286-261[ (b) ], which deals with a consequence of administrative revocation [*i.e.,* the period of administrative revocation applicable to arrestees who have consented to be tested for blood alcohol concentration], in the context of the entire [HARDLA] and construe it in a manner consistent with its purpose."

*Toyomura,* 80 Hawai'i at 20, 904 P.2d at 905 (citation and internal quotation marks omitted). Accordingly, we construe HRS § 286-261(b) in pari materia with HRS § 286-261(c), which deals with the analogous consequence of administrative revocation applicable to arrestees who have refused to be tested for blood alcohol concentration. *See supra* notes 4 and 15.

---

15. In other words, "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning." HRS § 1-15(2) (1993). Moreover, "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1-16 (1993). *See also Toyomura,* 80 Hawai'i at 19 n. 16, 904 P.2d at 904 n. 16 (citations and internal quotation signals omitted).

HRS § 286–261(b) prescribes "[t]he periods of administrative revocation which *may* be imposed" (emphasis added) under HARDLA as a function of the number of an arrestee's prior alcohol enforcement contacts during the various enumerated periods of time preceding the date of arrest. *See supra* note 4. By contrast, HRS § 286–261(c) prescribes the periods for which the driver's license "of an arrestee who refuses to be tested after being informed of the sanctions [resulting from the refusal] *shall* be revoked under [HRS §§ 286–261](b)(1), (2), or (3)." (Emphasis added.) *See id.*

In the past, this court has subscribed to the proposition that, "[w]here [the] verbs ['shall' and 'may'] are used in the same statute, especially where [they] are used in close juxtaposition, we infer that the legislature realized the difference in meaning and intended that the verbs used should carry with them their ordinary meanings." *In re Tax Appeal of Fasi*, 63 Haw. 624, 626–27, 634 P.2d 98, 101 (1981) (citations omitted). Not surprisingly, we have therefore construed the "close proximity of the contrasting verbs 'may' and 'shall' [to] require[ ] a *mandatory* effect for the term 'shall.' " *Id.* at 627, 634 P.2d at 101 (emphasis added). Thus applied to HRS §§ 286–261(b) and –261(c), the converse would seem to follow, namely, that the close proximity of the contrasting verbs "may" and "shall" requires a *non-mandatory, i.e.*, a discretionary, construction of the term "may."

Assuming the correctness of the foregoing logic, the use of the verb "may" in HRS § 286–261(b) would signal that the imposition of the periods of administrative driver's license revocation in connection with the five classes of arrestees enumerated in that subsection necessarily entails the exercise of *some* degree of discretion, whereas the use of the verb "shall" in HRS § 286–261(c) would signal that the imposition of the periods of administrative revocation delineated therein

does not. *Cf. Toyomura*, 80 Hawai'i at 21, 904 P.2d at 906 (construing the verb "shall," contained in HRS § 286–261(d), *see infra* at 28 & n.18, as mandating the referral of persons, whose driver's licenses have been administratively revoked under HARDLA, to a certified substance abuse counselor for a needs assessment); *State v. Himuro*, 70 Haw. 103, 105–06, 761 P.2d 1148, 1149–50 (1988) (construing the verb "shall," contained in HRS § 286–156 (1985), which was repealed in 1990, *see* 1990 Haw. Sess. L. Act 188, § 10 at 412, as mandating a hearing, within twenty days, to determine the truth and correctness of the arresting police officer's affidavit supporting the revocation of an arrestee's driver's license for refusal to submit to a breath or blood test in violation of the "implied consent law"). In fact, none of HARDLA's plain language indicates that the Director, pursuant to HRS §§ 286–258 and – 259, *see supra* notes 6 and 7, would lack the discretion to impose a term of administrative driver's license revocation that is either less or greater than the periods enumerated in HRS § 286–261(b).

On the other hand, neither the plain language of HARDLA, in general, nor of HRS § 286–261(b), in particular, provides a clue as to the parameters and criteria, if any, within and by which the Director would exercise discretion in the imposition of terms of administrative revocation other than those expressly enumerated in the statute.[16] Thus, for example, a "subsection (b)(1) arrestee" could, in theory, be subject to a lifetime administrative driver's license revocation, and a "subsection (b)(4) arrestee" could, in theory, be eligible for an administrative revocation for a period of a single day.

The complexity of the issue is compounded by the imprecision with which the terms "may" and "shall" are sometimes legislatively employed, suggesting that their "ordinary meanings" are by no means clear. The term "may" has variously been defined to mean

---

**16.** In this respect, HARDLA—as currently drafted—is in much the same condition of the Hawai'i Penal Code (HPC), HRS Title 37, prior to the 1986 amendment of HRS § 706–606, which now identifies universal "[f]actors to be considered in imposing a [criminal] sentence." *See generally Gaylord*, 78 Hawai'i at 144–54, 890 P.2d at

1184–94. However, as *Gaylord* demonstrates in the context of the HPC, the absence of express guidelines merely begs the question whether the legislature intended the Director to have *any* discretion regarding the periods of administrative revocation to be imposed pursuant to HRS § 286–261(b).

(1) has discretion to; is permitted to <suit may be brought in any district court>; (2) possibly will <the court may apply this doctrine>; or (3) shall. Sense (3), though a lexical perversion, has come about because "courts not infrequently construe *may* as *shall* or *must* to the end that justice may not be the slave of grammar" (*Black's* 6th ed.).

But no drafter who means *must* should consciously use *may;* the liberties taken by the courts in construing drafters' oversights should not be allowed to change the essential meanings of basic words like *may.* . . .

B. Garner, *A Dictionary of Modern Legal Usage* 552–53 (2d ed.1995) [hereinafter, *Modern Legal Usage* ] (emphasis in original). "Modern" usage of the term "shall," as a "word of authority," has created a similar hodgepodge.

[F]ew reforms would improve legal DRAFTING more than if drafters were to begin paying closer attention to the verbs by which they set forth duties, rights, prohibitions, and entitlements. In the current state of common-law drafting, these verbs are in a horrific muddle—and, what is even more surprising, few drafters even recognize this fact. The primary problem is *shall,* to which we must immediately turn.

**A. Shall.** This word runs afoul of several basic principles of good drafting. The first is that a word used repeatedly in a given context is presumed to bear the same meaning throughout. (*Shall* commonly shifts its meaning even in midsentence.) The second principle is strongly allied with the first: when a word takes on too many senses and cannot be confined to one sense in a given document, it becomes useless to the drafter. (*Shall* has as many as eight senses in drafted documents.)

The third principle has been recognized in the literature on legal drafting since the mid–19th century: good drafting generally ought to be in the present tense, not the future. (*Shall* is commonly used as a future-tense modal verb.) In fact, the selfsame quality in *shall*—the fact that it is a CHAMELEON–HUED WORD—causes it to violate each of those principles.

How can *shall* be so slippery, one may ask, when every lawyer knows that it denotes a mandatory action? Well, perhaps every lawyer has heard that it's mandatory, but very few consistently use it in that way. And, as a result, courts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and vice-versa. These holdings have been necessary primarily to give effect to slipshod drafting.[17]

. . . .

One solution to the problem that *shall* poses is to restrict it to one sense. This solution—called the "American rule" because it is an approach followed by some careful American drafters—is to use *shall* only to mean "has a duty to." . . .

*Modern Legal Usage* at 939–40 (emphasis in original).

In our view, the foregoing analysis suggests that "there is doubt . . . or uncertainty" with respect to the meaning of the verbs "may" and "shall," as employed in HRS §§ 286–261(b) and –261(c), and that, therefore, "an ambiguity exists" as to whether and to what extent the Director possesses the discretionary authority to vary the enumerated periods of administrative revocation. *See Toyomura,* 80 Hawai'i at 19, 904 P.2d at 904. For this reason, we look to the legislative history underlying that statute "as an inter-

---

17. *Cf. In re Adoption of Watson,* 45 Haw. 69, 361 P.2d 1054 (1961), in which this court had the following to say:

The word "shall" is generally construed as mandatory in legal acceptation. This court, however, recognizes that there is great diversion in decisional precedents involving the distinction between the words "shall" and "may". For instance, in *Tai Kee v. Minister of Interior,* 11 Haw. 57, the word "may", as it appeared in a statute, was construed as "shall" and given

mandatory rather than a permissive effect. For the reason that an ambiguity is often created by the susceptibility of a word having two or more meanings, courts are impelled in such case to resort to other recognized criteria to determine its intended meaning. In every case, the ascertainable intent of the law-making body must prevail. Legislative intent is the "guiding star" in the interpretation of a statute. *Territory v. Morita,* 41 Haw. 1 [(1955)]. *Id.* at 79, 361 P.2d at 1059.

pretive tool" in "determining the legislative intent." *Id.*

2. *Legislative history underlying HRS § 286–261*

a. *S.B. No. 1148—embryogenesis*

The comprehensive administrative driver's license revocation scheme, which ultimately emerged as HARDLA, was conceived on February 3, 1989, when S.B. No. 1148 was introduced in the state Senate. Section 2 of S.B. No. 1148 provided for a new part of the Hawai'i Revised Statutes "to be appropriately designated ... as ... Alcohol and Revocation of Driver's License." In particular, section 2 contained the precursor to HRS § 286–261, styled § 286–E and entitled "Effective date and period of revocation; alcohol assessment." The initial version of § 286–E(b) (the forerunner of HRS § 286–261(b)) provided:

> The period of license revocation under this part *shall* be as follows without the possibility of exemption:
>
> (1) Three months if the person is charged with a violation of section 291–4 and the person's driving record shows no prior alcohol or drug related enforcement contacts during the person's driving history;
>
> (2) Six months if the person refused to submit to a breath or blood test and the person's driving record shows no prior alcohol or drug related enforcement contacts during the person's driving history;
>
> (3) One year, for a license revocation pursuant to section 286–B(a) or (b) [pertaining to (a) persons determined to have driven, operated, or been in actual physical control of a motor vehicle while their blood or breath alcohol concentrations exceeded the allowable limit and (b) persons who refused to submit to breath or blood testing after being informed of the sanction therefor and as to whom there was probable cause to believe that they had driven, operated, or were in actual physical control of a motor vehicle while under the influence of intoxicating liquor], if the person's driving record shows one prior alcohol or drug related enforcement contact during the person's driving history;
>
> (4) Two years, for a license revocation pursuant to section 286–B(a) or (b), if the person's driving record shows two prior alcohol or drug related enforcement contacts during the person's driving history;
>
> (5) For life, for a license revocation pursuant to section 286–B(a) or (b), if the person's driving record shows three or more prior alcohol or drug related enforcement contacts during the person's driving history; or
>
> (6) For the period until the person's twenty-first birthday, or for the revocation period described in section 286–E(b)(1)–(5), whichever is longer, for persons under the age of twenty-one years.

(Emphasis added.)

Thus, as originally conceived in S.B. No. 1148, § 286–261(b) (*i.e.*, § 286–E(b)) contemplated an administrative scheme entailing periods of driver's license revocation that escalated as a function of the number of "prior alcohol or drug related enforcement contacts during the [arrestee's] driving history." The scheme also contained an aspect of HRS § 286–261(c) in its present form, insofar as it enhanced the revocation period for first-time arrestees who refused to submit to breath or blood testing; noticeably lacking, however, were any penalties for such refusals on the part of arrestees whose driving histories included prior alcohol or drug related enforcement contacts. In any event, because § 286–E(b) provided that each enumerated "period of license revocation under this part *shall* be as follows without the possibility of exemption" (emphasis added), the prescribed periods were ostensibly mandatory and, therefore, nondiscretionary.

Consistent with the foregoing, § 286–E(c), as set forth in the original version of S.B. No. 1148, section 2, and which remained essentially unchanged throughout the evolution of the bill, *see* section III.B.2.b. of this opinion, *infra*, until the conference committee substantially redrafted it, *see* section III.B.2.c. of

this opinion, *infra*, did not separately prescribe periods of administrative revocation for persons refusing alcohol testing or allude in any way to the periods enumerated in § 286–E(b); rather, § 286–E(c) provided for mandatory referral of persons whose driver's licenses had been revoked to a certified substance abuse counselor.[18] Moreover, the contemporaneous Senate and House standing committee reports shed no light on the question whether the Director was to be accorded any discretion in the imposition of the periods of administrative revocation enumerated in § 286–E(b). *See* Sen. Stand. Comm. Rep. No. 355, in 1989 Senate Journal, at 955; Sen. Stand. Comm. Rep. No. 670, in 1989 Senate Journal, at 1062–63; Hse. Stand. Comm. Rep. No. 1071, in 1989 House Journal, at 1229–30; Hse. Stand. Comm. Rep. No. 1191, in 1989 House Journal, at 1269–70.

b. *S.B. No. 1148—interim evolution*

S.B. No. 1148 underwent three subsequent pre-conference committee redrafts during the 1989 legislative session, designated, respectively, S.D.1, S.D.2, and S.D.2/H.D.2. In the first two of the redrafts, S.D.1 and S.D.2, § 286–E(b) mutated into the following:

The period of license revocation under this part *shall* be as follows without the possibility of exemption:

(1) Three months if the person's driving record shows no prior alcohol enforcement contacts during the person's driving history;

(2) One year if the person's driving record shows one prior alcohol or drug related enforcement contact during the person's driving history;

(3) Two years if the person's driving record shows two prior alcohol or drug related enforcement contacts during the person's driving history; or

(4) For life if the person's driving record shows three or more prior alcohol or

drug related enforcement contacts during the person's driving history.

(Emphasis added).

Consequently, § 286–261(b) (*i.e.,* § 286–E(b)), as it appeared in S.D.1 and S.D.2, differed from its original manifestation in S.B. No. 1148 in three respects. First, first-time arrestees were subject to a three-month license revocation regardless of whether the arrestee had had prior "drug related" enforcement contacts during his or her driving history. Second, persons under the age of twenty-one years ceased to be a class singled out for special treatment. And, third, the enhanced revocation period for first-time arrestees who refused to submit to breath or blood testing was eliminated. Nevertheless, the prescribed revocation periods enumerated in § 286–261(b) continued to be mandatory and nondiscretionary.

In the third of the pre-conference committee redrafts of S.B. No. 1148, styled S.D.2/H.D.2,[19] § 286–261(b) took the following form:

The period of license revocation under this part *shall* be as follows without the possibility of exemption:

(1) For a person who submitted to a test showing a blood alcohol concentration of .10 per cent or more, or in the case of persons under the age of twenty-one years .05 per cent or more, three months if the person's driving record shows no prior alcohol or drug related enforcement contacts during the five years preceding the date of arrest[;] provided that a person who meets the requirements established in section 286–[BLANK] may, *at the discretion of the [D]irector,* be permitted to drive to and from work, for work-related purposes, and to and from any alcohol assessment or treatment required under subsection (c) upon installation for six months of an ignition interlock sys-

---

18. Thus, § 286–E(c) was the progenitor of HRS § 261(d) in its current form. The provisions of HRS § 286–261(d) (1993) were construed at length in *Toyomura*, 80 Hawai'i at 15 n. 11, 18–22, 904 P.2d at 900 n. 11, 903–07.

19. The new administrative revocation scheme appeared in section 3 of S.D.2/H.D.2. The system used for designating the sections within the scheme was stylistically altered. Accordingly, the section numbers appearing in HARDLA, as presently configured, will be utilized henceforth in this opinion for the sake of convenience.

tem meeting the requirements of chapter [BLANK];

(2) Six months if the person refused to submit to a breath or blood test and the person's driving record shows no prior alcohol or drug-related enforcement contacts during the five years preceding the date of arrest;

(3) One year if the person's driving record shows one prior alcohol or drug related enforcement contact during the five years preceding the date of arrest[,] to be followed by the installation of an ignition interlock system meeting the requirements of chapter [BLANK] for a minimum of one year and a maximum of three years, *to be determined by the [D]irector;*

(4) Two years if the person's driving record shows two prior alcohol or drug related enforcement contacts during the seven years preceding the date of arrest[,] to be followed by the installation of an ignition interlock system meeting the requirements of chapter [BLANK] for a minimum of three years and a maximum of five years, *to be determined by the [D]irector;*

(5) For life if the person's driving record shows three or more prior alcohol or drug related enforcement contacts during the ten years preceding the date of arrest; or

(6) For persons under the age of twenty-one years, for the period remaining until the person's twenty-first birthday, or for the revocation period described in paragraphs (1) to (5) of this subsection, whichever is longer, to be followed by the installation for one year of an ignition interlock system meeting the requirements of chapter [BLANK].

(Emphasis added.)

Thus, § 286–261(b), as it appeared in S.D.2/H.D.2 of S.B. No. 1148, differed from § 286–E(b), in its S.D.1 and S.D.2 incarnations, in six respects. First, the requirement than an arrestee have no prior *drug*-related "enforcement contacts" in order to be eligible for the minimum three-month administrative revocation, as contemplated in the original draft of S.B. No. 1148, was reinstated. Second, the special treatment afforded persons under the age of twenty-one years, also as contemplated in the original draft of S.B. No. 1148, was substantially reinstated. Third, the enhanced revocation period for first-time arrestees who refused to submit to breath or blood testing was reinstated. Fourth, a system of escalating periods of time preceding the date of current arrest—generally increasing from five to ten years as a function the number of an arrestee's prior enforcement contacts—was substituted for the blanket applicability of the arrestee's entire "driving history." Fifth, the mandatory installation of an ignition interlock system was added as a requirement with respect to arrestees who were potentially eligible for driver's license reinstatement. And, sixth, for the first time, S.B. No. 1148 accorded the Director a modicum of discretion, which could be exercised in two areas: (1) the Director could—but was not mandated to—permit first-time arrestees (who had submitted to breath or blood testing) to drive for work, assessment, and treatment-related purposes, so long as the arrestee's motor vehicle was equipped with an approved ignition interlock system for six months; and (2) the Director was authorized to prescribe the duration of the required ignition interlock system in the motor vehicles of second and third-time arrestees, subject to statutory minimum and maximum time periods. Significantly, however, the prescribed revocation periods enumerated in § 286–261(b) continued to be otherwise mandatory and nondiscretionary.

c. *S.B. No. 1148—conference committee version (S.D.2/H.D.2/C.D.1)*

During the 1989 session, the respective legislative houses failed to achieve a meeting of the minds regarding the foregoing changes to S.B. No. 1148. Accordingly, a conference committee was constituted to draft yet a new version of the bill.

The conference committee produced its revised draft of S.B. No. 1148, which it styled S.D.2/H.D.2/C.D.1, in the course of the 1990 legislative session. In this final version of

S.B. No. 1148, the language of §§ 286–261(b) and –261(c) was changed to the following:

> (b) The periods of administrative revocation which *may* be imposed under this part are as follows:
>
> (1) Three months, if the arrestee's driving record shows no prior alcohol enforcement contacts during the five years preceding the date of arrest;
>
> (2) One year if the arrestee's driving record shows one prior alcohol enforcement contact during the five years preceding the date of arrest;
>
> (3) Two years if the arrestee's driving record shows two prior alcohol enforcement contacts during the seven years preceding the date of arrest;
>
> (4) For life if the arrestee's driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest; or
>
> (5) For arrestees under the age of eighteen years, the period remaining until the arrestee's eighteenth birthday, or for the appropriate revocation period provided in paragraphs (1) to (4) or in subsection (c), whichever is longer.
>
> (c) *The periods of administrative revocation provided in subsections (b)(1), (b)(2), and (b)(3) are minimum and shall not preclude the discretion of the [D]irector to impose a longer period;* provided

that the license of an arrestee who refuses to be tested and who is found to have been driving under the influence of intoxicating liquor *shall be revoked* under subsections (b)(1), (2), and (3) for a *minimum* period of six months, two years, and four years, respectively.

(Emphasis added). The conference committee report addressing the final version of S.B. No. 1148 stated in relevant part:

> Periods of revocation run from three months to life, depending on the number of prior alcohol-related convictions the defendant has, either in Hawaii or in any other State or possession of the United States. If the defendant refused to take a blood test, the revocation period is doubled.

Sen. Conf. Comm. Rep. No. 137, in 1990 Senate Journal, at 826; Hse. Conf. Comm. Rep. No. 137, in 1990 House Journal, at 825.[20]

#### d. S.B. No. 1148—Act 188

The administrative revocation scheme created by S.B. No. 1148, as amended by the conference committee, was enacted into law as part of Act 188, *see* 1990 Haw. Sess. L. Act 188 [hereinafter, Act 188], § 3 at 400–09, was approved by the Governor on June 19, 1990, and, by its terms, was to take effect on July 1, 1991. *See* Act 188, § 16 at 413.[21]

---

**20.** The quoted language of the conference committee report was obviously not intended to be a precise or comprehensive characterization of the relevant provisions of S.B. No. 1148, as amended. For example, Act 188 (the codification of S.B. No. 1148 in its final form, *see* section III.B.2.d. of this opinion, *infra* ) did not prescribe a blood test as the only means of establishing blood alcohol concentration, but, rather, permitted an arrestee to opt for either a blood or breath test. *See* HRS § 286–151(a) (Supp.1990) (deeming any operator of a motor vehicle on public highways to have consented to test "of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood"); *see also* HRS § 286–258(c)(2), *supra* at note 6. Moreover, HRS § 286–261(b) did not condition the period of an administrative revocation exclusively upon prior "convictions," but, rather, upon the number of an arrestee's prior "alcohol enforcement contacts" as defined in HRS § 286–251. *See supra* note 4. In this connection, Act 188 eliminated "drugs" from the relevant "enforcement contacts." Finally, there is no mention of the discretion accorded the Director by

the plain language of HRS § 286–261(c) to increase the "minimum" periods of administrative revocation enumerated in HRS §§ 286–261(b)(1), –261(b)(2), –261(b)(3), and –261(c). *See* section III.B.2.d. of this opinion, *infra*.

**21.** As discussed *infra* at section III.B.2.e. of this opinion, a portion of section 3 and sections 10 and 11 of Act 188 (which appeared earlier as section 6 of the original S.B. No. 1148, section 6 of S.D.1, sections 7 and 8 of S.D.2, and sections 9 and 10 of S.D.2/H.D.2) temporarily impeded the launching of HARDLA. Without explanation, Act 188, sections 10 and 11 completely repealed HRS §§ 285–155, –156, –157, and –161, which, in combination, had generally provided for the unconditional judicial revocation of the driver's licenses of persons who refused to submit to breath or blood testing in accordance with the implied consent law, regardless of whether such persons were ultimately proved to have been DUI. In addition, Act 188, section 3 included a section in the administrative revocation scheme entitled "Conditional permits." As codified by

The language quoted above was codified as HRS §§ 286–261(b) and –261(c) (Supp.1990).

Pursuant to Act 188, HRS § 286–261 combined various features previously contained in one or more of the evolving drafts of S.B. No. 1148. For present purposes, however, Act 188 is of critical significance for two reasons. For the first time in the legislative evolution of the administrative revocation scheme, the prefatory clause of HRS § 286–261(b) eliminated the phrase "*shall* be as follows without the possibility of exemption" (emphasis added) and substituted it with "*may* be imposed" (emphasis added). Of equal significance is the fact that HRS § 286–261(c), as codified by Act 188, was completely novel and reflected an unequivocal about-face in the legislature's intent; HRS § 286–261(c) now declared that the periods of administrative revocation enumerated in HRS § 286–261(b)(1), (b)(2), and (b)(3) were "minimum"—both with respect to arrestees who submitted to breath or blood testing and those who refused to do so—and expressly granted the Director the discretion to impose periods of administrative revocation "longer" than those "minimum[s]." [22]

Thus, the prescribed revocation periods enumerated in HRS § 286–261(b)(1), (b)(2), and (b)(3) were no longer mandatory and nondiscretionary. To the contrary, HRS § 286–261(b) now empowered the Director to exercise discretion regarding the duration of administrative revocations imposed thereunder, as limited by the plain language of HRS § 286–261(c). With respect to the three-month, one-year, and two-year periods enumerated in HRS § 286–261(b)(1), (b)(2), and (b)(3), the Director could, in his or her discretion, *increase* the duration of an administrative revocation but not *decrease* it. That HRS § 286–261(c) was silent with respect to whether a lifetime revocation, pursuant to HRS § 286–261(b)(4), constituted a "minimum" is fully consonant with the rationale underlying the limited discretion accorded the Director under HRS §§ 286–261(b) and –261(c); inasmuch as, pursuant to HRS § 286–261(c), the Director could undertake only *upward* departures from the revocation periods enumerated in HRS § 286–261(b), a reference in subsection (c) to subsection (b)(4) would have been surplusage, enhancement of a lifetime revocation being a logical impossibility. Put differently, HRS § 286–261(c), as originally codified by Act 188, accorded the Director no discretion with respect to the *lifetime* administrative revocation enumerated in HRS § 286–261(b)(4) because, by its very nature, no "longer period" could be imposed.

### e. *H.B. No. 1016*

Section 13 of Act 188 provided in relevant part that "[t]he [D]irector shall report to the

---

Act 188, the section, appearing as HRS § 286–264 (Supp.1990), provided in relevant part:

> **Conditional permits.** (a) If an arrestee subject to administrative revocation under this part has no prior alcohol enforcement contacts, the [D]irector *may*, at the request of the arrestee at the administrative hearing, issue a conditional permit allowing the arrestee to drive after a minimum period of absolute license suspension of thirty days if one or more of the following conditions are met:
> (1) The arrestee is gainfully employed in a position that requires driving and will be discharged if the arrestee's driving privileges are administratively revoked; or
> (2) The arrestee has no access to alternative transportation and therefore must drive to work or to a substance abuse treatment facility or counselor for treatment ordered by the [D]irector under section 286–[261].

(Emphasis added.) Thus, the "conditional permits" section, as it appeared in Act 188, authorized the Director, in his or her discretion, to permit *any* first-time arrestee—including an arrestee who had refused to submit to breath or blood testing in accordance with the implied consent law—to drive under the conditions delineated therein. *1991 Haw. Spec. Sess. L.* Act 1, § 14, at 1070, amended HRS § 286–264(a) to limit conditional permits to otherwise eligible first-time arrestees who "submitted to a breath or blood test." *See infra* note 25. 1996 Act 230 made stylistic changes to HRS § 286–264(a) and amended it substantively to apply to first-time arrestees who had no prior alcohol enforcement contacts "during the five years preceding the date of arrest[.]" 1996 Act 230, § 5 at 528.

**22.** Regarding "subsection (b)(1), (b)(2), and (b)(3) arrestees" who refused to be tested for blood alcohol concentration, we note that HRS § 286–261(c) consistently doubled the prescribed "minimum" periods of administrative revocation—from three months to six months, one year to two years, and two years to four years, respectively. *See* Sen. Conf. Comm. Rep. No. 137, in 1990 Senate Journal, at 825–26; Hse. Conf. Comm. Rep. No. 137, in 1990 House Journal, at 824–25.

1991 session of the legislature as to any further provisions or procedures which should or would be required in order to implement this act on July 1, 1991." 1990 Haw. Sess. L. Act 188, § 13 at 413. In addition, the Senate adopted a resolution, S.R. No. 188–90, requesting the Director to form a task force to consult with public and private individuals and groups to assist in the implementation of Act 188. Hse. Stand. Comm. Rep. No. S1–91, in 1991 House Journal (Spec.Sess.), at 11. Accordingly,

> the Director formed a task force consisting of representatives from the Department of Transportation, Department of Health, the Attorney General's office, the Chiefs of Police of all counties, the Prosecutors' offices of all counties, Mothers Against Drunk Driving, the Public Defender's office, and the Division of Motor Vehicles from the counties of Honolulu and Maui ("Task Force").

*Id.* The Task Force recommended a number of changes to Act 188, including the universal reinstatement of unconditional license revocation for persons who refused breath or blood testing in accordance with the implied consent law.[23] *See* Gov. Msg. No. 264, in 1991 House Journal, at 741–43; Gov. Msg. No. 414, in 1991 Senate Journal, at 712–13.

During the course of the 1991 legislative session, the House of Representatives proposed H.B. No. 1016, which contained various amendments to Act 188 and was designed to be responsive to the recommendations of the Task Force. Hse. Stand. Comm. Rep. No. 882, in 1991 House Journal, at 1149; Sen. Stand. Comm. Rep. No. 1108, in 1991 Senate Journal, at 1141; Hse. Conf. Comm. Rep. No. 31, in 1991 House Journal, at 783–84; Sen. Conf. Comm. Rep. No. 31, in 1991 Senate Journal, at 755. Apparently to this end, H.B. No. 1016, in its original form, amended HRS § 286–264 (the "Conditional permits" section), *see supra* note 21, to apply only to first-time arrestees who had "submitted to a breath or blood test" in accordance with the implied consent law. This remedial action, however, was deleted in the final conference

committee draft—H.B. No. 1016, C.D.1. Thus, H.B. No. 1016, as enacted by the legislature, "failed to reinstate the most important sanction for refusal to take a blood or breath test: unconditional license revocation[, which] had been the law since 1967 but was effectively repealed by Act 188." Gov. Msg. No. 264, in 1991 House Journal, at 742; Gov. Msg. No. 414, in 1991 Senate Journal, at 712. Primarily for this reason, the Governor vetoed the bill. *Id.*

Nevertheless, H.B. No. 1016, as enacted and vetoed, is germane to our analysis because of its treatment of HRS §§ 286–261(b) and –261(c), as initially codified by Act 188. Significantly, the prefatory clause of HRS § 286–261(b) continued to speak in terms of the "periods of administrative revocation which *may* be imposed under this part[.]" (Emphasis added.) [24] As discussed *supra* in section III.B.2.d. of this opinion, the legislature had substituted the verb "may" for "shall" for the sole purpose of reflecting the new discretion that Act 188 had reposed in the Director by virtue of the plain language of HRS § 286–261(c), which clarified that "[t]he periods of administrative revocation provided in [HRS §§ 286–261](b)(1), (b)(2), and (b)(3) are *minimum* and shall not preclude the *discretion* of the [D]irector to impose a *longer* period[.]" (Emphasis added.)

On the other hand, H.B. No. 1016, as enacted and vetoed, amended HRS § 286–261(c), *inter alia,* to delete that very discretionary language, as follows:

> The [periods of administrative revocation provided in subsections (b)(1), (b)(2), and (b)(3) are minimum and shall not preclude the discretion of the director to impose a longer period; provided that the] license of an arrestee who refuses to be tested and who is found to have been driving under the influence of intoxicating liquor shall be revoked under [subsections] subsection (b)(1), (2), [and] or (3) for a [minimum] period of [six months,] one year, two years, and four years, respectively[.] , if a preponderance of the evidence

---

**23.** *See supra* note 21.

**24.** H.B. No. 1016 left HRS § 286–261(b) intact, except that it amended subsection (b)(5) to delete any reference to HRS § 286–261(c).

proves that the arrestee refused to submit to a breath or blood test.

(Language added by the amendment underscored and deleted language bracketed.) Moreover—although the revocation period prescribed for first-time arrestees, who both refused to be tested for blood alcohol concentration and were found to have been driving under the influence of intoxicating liquor, was increased from six months to one year—, HRS § 286–261(c) was stripped of the term "minimum," by which Act 188 had established that the Director generally possessed the discretion to revise upward the enhanced revocation periods to which "refusers" were subject.

Problematically, the only explanation given in the legislative history for the foregoing changes was that HRS § 286–261(c), as H.B. No. 1016 sought to amend it, would "allow the [D]irector to consider the refusal to submit to a chemical test as a factor in determining the period of revocation under [HRS § ] 286–261." Hse. Conf. Comm. Rep. No. 31, in 1991 House Journal, at 783; Sen. Conf. Comm. Rep. No. 31, in 1991 Senate Journal, at 755. Thus, the legislative committee reports addressing H.B. No. 1016 were completely silent regarding the bill's intended impact on the Director's discretion, which was clearly reflected in HRS §§ 286–261(b) and –261(c) as codified by Act 188, to impose administrative revocations for periods longer than those enumerated in HRS §§ 286–261(b)(1), –261(b)(2), –261(b)(3), or –261(c).

*f. 1991 special session—S.B. No. S1*

The legislative history subsequent to the demise of H.B. No. 1016 indicates that,

[p]rior to the Gubernatorial veto of H.B. No. 1016, C.D. 1, the Legislature scheduled a special session to amend Act 188[ ] to provide that the sanction for refusing to take a breath or blood test would not be contingent on proof of driving under the influence of intoxicating liquor. In the statement of his objections, the Governor concurred in the desirability of such an amendment.... The amendment [would] encourage drivers to submit to breath or blood tests and the resulting availability of objective evidence of intoxication, or the lack of it, [would] make the revocation procedure fairer, more accurate, and less subject to the discretion of police officers.

Sen. Stand. Comm. Rep. No. S1–91, in 1991 Senate Journal (Spec.Sess.), at 27. Accordingly, a special session of the legislature was convened to deal with the revision of Act 188.

The exclusive work product of the 1991 special legislative session was S.B. No. S1, which was enacted as Act 1 and approved by the Governor on June 29, 1991. 1991 Haw. Spec. Sess. L. Act 1 [hereinafter, Act 1], §§ 1 through 20 at 1061–72.[25] The purpose of Act 1 was "to amend [HRS ch. 286] to improve the pending law on administrative revocation of drivers' licenses (Act 188[ ]) concurrently with the effective date of that law," Sen. Stand. Comm. Rep. No. S1–91, in 1991 Senate Journal (Spec.Sess.), at 27, which was

---

**25.** It would appear that the Governor's approval of Act 1 was prompted by its revisions to the administrative revocation scheme "limit[ing] conditional licenses to those drivers who submitted to a test of their breath or blood," thereby remedying the defect that had caused the Governor to veto H.B. No. 1016. Sen. Stand. Comm. Rep. No. S1–91, in 1991 Senate Journal (Spec.Sess.), at 27. Accordingly, Act 1 amended Act 188, *inter alia,* by "[m]aking persons who refuse[d] to take a blood or breath test ... ineligible for conditional licenses." Hse. Stand. Comm. Rep. No. S1–91, in 1991 House Journal (Spec.Sess.), at 11. *See* Act 1, § 1 at 1061 (creating a new section of HRS ch. 286, part VII— HRS § 286–155.5—, which provided that, "[i]f a person under arrest refuses to submit to a breath or blood test, none shall be given ..., but the person shall be subject to the procedures and sanctions under [HARDLA]"); Act 1, § 10 at

1066–68 (amending, *inter alia,* HRS § 286–258(d)(3), *see supra* note 6, to provide for administrative revocation if the Director determined, *inter alia,* that "the evidence prove[d] by a preponderance ... that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of [HARDLA]"); Act 1, § 11 at 1068–69 (amending, *inter alia,* HRS § 286–259(e), *see supra* note 7, to provide for administrative affirmance of a license revocation if, *inter alia,* "the [D]irector determine[d] that ... the evidence prove[d] by a preponderance ... that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of [HARDLA]"); Act 1, § 14 at 1070 (amending HRS § 286–264(a), *see supra* note 21, to limit access to conditional permits to first-time arrestees who, *inter alia,* have "submitted to a breath or blood test)."

delayed for one month to August 1, 1991. Act 1, § 18 at 1071–72; Hse. Stand. Comm. Rep. No. S1–91, in 1991 House Journal (Spec.Sess.), at 11. By its terms, Act 1 superseded Act 188 to the extent that the two were in conflict. Act 1, § 20, at 1072.[26]

Act 1 did not amend HRS § 286–261(b) (Supp.1990), as enacted by Act 188; accordingly, as implemented on August 1, 1991, the prefatory clause retained the discretionary verb "may." Act 1, § 13 at 1070. *See supra* note 4 and sections III.B.2.c. and III.B.2.d. of this opinion. Additionally, Act 1 harmonized the terms of HRS § 286–261(c) (Supp.1991) with other changes that it effected in HARD-LA, *see supra* note 25, but otherwise reenacted HRS § 286–261(c) in its H.B. No. 1016 form. Accordingly, Act 1 amended HRS § 286–261(c), as initially codified by Act 188, to provide that "[t]he license of an arrestee who refuses to be tested after being informed of the sanctions of this part shall be revoked under subsection (b)(1), (2), or (3) for a period of one year, two years, and four years, respectively." Act 1, § 13 at 1070. *See supra* note 4 and section III.B.2.e. of this opinion.[27]

Other than to address the unrelated concern that prompted the Governor's veto of H.B. No. 1016, the relevant standing committee reports express no legislative intent to vary the Director's discretionary authority, clearly reflected in Act 188, regarding the periods of administrative revocation imposed under HRS §§ 286–261(b) and –261(c). *See* Sen. Stand. Comm. Rep. No. S1–91, in 1991 Senate Journal (Spec.Sess.), at 27–28; Hse. Stand. Comm. Rep. No. S1–91, in 1991 House Journal, at 11–12. Thus, in promulgating HRS § 286–261(c) (Supp.1991), the legislature's reasons for deleting the phrase "periods of administrative revocation provided in subsections (b)(1), (b)(2), and (b)(3) are minimum and shall not preclude the discretion of the director to impose a longer period" from the first sentence of HRS § 286–261(c)

(Supp.1990) and for further deleting the word "minimum" from the proviso following that first sentence are ultimately unknowable.

3. *The extent of the Director's discretion under HRS §§ 286–261(b) and –261(c)*

Having reviewed the relevant legislative history, we now return to the outcome-dispositive question presented by this appeal, *i.e.,* whether and to what extent HARDLA, in its current form, accords the Director the discretion to deviate from the periods of administrative revocation enumerated in HRS § 286–261(b). In our view, four answers to the question are conceptually possible. The first—Option One—is that HRS § 286–261(b) now accords the Director no discretion at all, but rather mandates that the Director impose the specific periods of administrative revocation enumerated by the statute. The second—Option Two—is that HRS § 286–261(b) confers unlimited discretion on the Director to vary the "default" periods enumerated in subsections (b)(1) through (b)(4), both upward and downward. The third— Option Three—is that Act 1 left the Director's discretion under HRS § 286–261(b), accorded by the adoption and codification of Act 188, completely intact and unchanged. And the fourth—Option Four—is that Act 1 preserved the discretion accorded the Director by Act 188, but in a new and altered form.

We confess that none of the foregoing options is analytically ideal, such that any one of them arranges all pieces of the jigsaw puzzle into a perfect fit. Nevertheless, the "true meaning" of HRS § 286–261(b), reflecting "[t]he reason and spirit of the law[ ] and the cause which induced the legislature to enact it," *see* HRS § 1–15(2) (1993), *supra* at note 15, must, of necessity, lie in one of them. For the reasons discussed below, we believe that Option Four represents the most sensible interpretation of HRS § 286–261(b), when read "in the context of the entire

---

**26.** In a real sense, the extent to which Act 188 and Act 1 are "in conflict" is at the heart of the dispositive issue presented in this appeal, namely, whether, and to what extent the Director has discretion to vary the periods of administrative revocation from those enumerated in HRS §§ 286–261(b) and –261(c).

**27.** Except as to minor grammatical changes, HRS §§ 286–261(b) and –261(c) remain unchanged to this date. *See supra* note 4.

[HARDLA] and construe[d] ... in a manner consistent with its purpose." *Toyomura*, 80 Hawai'i at 20, 904 P.2d at 905.

### a. *Option One*

Option One—*i.e.*, that HRS § 286–261(b) now accords the Director no discretion at all regarding periods of administrative revocation—is an unacceptable reading of the statute. HRS § 286–261(b) retains the prefatory phrase "[t]he periods of administrative revocation which *may* be imposed" (emphasis added), which Act 188 substituted for the phrase "[t]he periods of license revocation ... *shall* be as follows without the possibility of exemption" (emphasis added) for the sole purpose of *empowering* the Director to exercise discretion regarding the duration of administrative revocations imposed pursuant to subsections (b)(1), (b)(2), and (b)(3) thereof. *See* section III.B.2.d. of this opinion, *supra*. In the absence of a clearly expressed legislative intent to divest the Director of this discretion, *see* sections III.B.2.e. and f. of this opinion, *supra*, a mandatory and nondiscretionary reading of the verb "may," juxtaposed with the obviously mandatory and nondiscretionary meaning of the verb "shall" as employed in HRS § 286–261(c), would (1) do violence to the inference "that the legislature realized the difference in meaning and intended that the verbs used should carry with them their ordinary meanings," *In re Tax Appeal of Fasi*, 63 Haw. at 626–27, 634 P.2d at 101, (2) "change the essential meaning[ ] of ... may," *Modern Legal Usage* at 553 (emphasis in original), and (3) transform the statute into "a horrific muddle," *see id.* at 939. Construing HRS § 286–261(b) in pari materia with HRS § 286–261(c), *see* HRS § 1–16 (1993), *supra* at note 15, we are unwilling to read the verb "may" in such a fashion.

### b. *Option Two*

Moreover, Option Two—*i.e.*, that HRS § 286–261(b) now confers *unlimited* discretion on the Director to vary the "default" periods enumerated in subsections (b)(1) through (b)(4) both upward and downward—is equally unacceptable because it would require us to ignore the manifest thrust of the relevant legislative history, which, under the circumstances, is the only "extrinsic aid" available to us as an "interpretive tool" for ascertaining the intent of the legislature. *See Toyomura*, 80 Hawai'i at 19, 904 P.2d at 904. As we have seen, Act 188 endowed the Director with the clear discretion to *increase* the periods of administrative revocations imposed pursuant to subsections (b)(1), (b)(2), and (b)(3), but not to *decrease* them. *See* section III.B.2.d. of this opinion, *supra*. Indeed, the Governor vetoed H.B. No. 1016 primarily because the global sanctions prescribed by HARDLA were not severe enough. *See* section III.B.2.e. of this opinion, *supra*. Thus, the legislative history of HRS § 286–261, discussed above, reveals a progressive ratcheting up of HARDLA's sanctions. In the face of that history, the inference that the legislature—without comment, for the first time ever, and contrary to the zeitgeist that motivated it—intentionally liberalized HRS § 286–261(b), so as to allow the Director to impose periods of administrative revocation less severe than those enumerated in its subsections, is simply untenable.

### c. *Option Three*

Finally, Option Three—*i.e.*, that Act 1 left the Director's discretion under HRS § 286–261(b), accorded by the adoption and codification of Act 188, completely intact and unchanged—is likewise unacceptable. As noted in section III.B.2.f. of this opinion, *supra*, Act 1, section 20 provided, *inter alia*, that the substantive provisions of Act 1 superseded those of Act 188 to the extent that the two were in conflict. As configured in Act 188, *see* section III.B.2.c. of this opinion, *supra*, HRS § 286–261(c) expressly declared that the periods of administrative revocation enumerated in HRS §§ 286–261(b)(1), (b)(2), and (b)(3) were "minimum[s]"—both with respect to arrestees who submitted to breath or blood testing and those who refused to do so—and expressly granted the Director the discretion to impose periods of administrative revocation "longer" than those "minimums." Accordingly, HRS § 286–261(c), as originally codified, enabled the Director to ensure that arrestees who refused to be tested for blood alcohol concentration could *always* be subject

to periods of administrative revocation that were enhanced beyond those of their "non-refusing" counterparts.[28]

■■ Act 1, however, materially revised HRS § 286–261(c) from its originally codified form, *inter alia*, by stripping it of the term "minimum," by which Act 188 had established that the Director generally possessed the discretion to revise upward the enhanced revocation periods to which "refusers" were subject. *See* section III.B.2.f. of this opinion, *supra*. Thus, HRS § 286–261(c), as amended by Act 1, merely provided that "[t]he license of an arrestee who refuses to be tested after being informed of the sanctions of this part *shall* be revoked under subsections (b)(1), (b)(2), or (3) for a period of one year, two years, and four years, respectively." (Emphasis added.) *See id.* At the same time, HRS § 286–261(b) retained the prefatory phrase "[t]he periods of administrative revocation which *may* be imposed," thereby preserving the Director's power to exercise discretion regarding the duration of administrative revocations imposed upon "non-refusing" arrestees pursuant to subsections (b)(1), (b)(2), and (b)(3) thereof. *See* section III.B.3.a. of this opinion, *supra*. Construing HRS §§ 286–261(b) and –261(c) in pari materia, *see* HRS § 1–16, *supra* at note 15, the inference is inescapable that Act 1 divested the Director of the discretion to vary the periods of administrative revocation for "refusing" arrestees enumerated in HRS § 286–261(c). *See In re Tax Appeal of Fasi*, 63 Haw. at 626–27, 634 P.2d at 101. To that extent, Act 1 was in conflict with Act 188 and therefore "superseded" it.

By the same token, the inference is inescapable that HRS § 286–261(c), as amended by Act 1, was intended to limit the Director's discretion, under HRS § 286–261(b), to increase the periods of administrative revocation imposed upon "non-refusing" arrestees pursuant to subsections (b)(1), (b)(2), and (b)(3). Were this not so, the Director could, as a discretionary matter, subject a "non-refusing" arrestee to a greater period of administrative revocation under HRS § 286–261(b) than would be imposed, as a mandatory and nondiscretionary matter, upon the arrestee's "refusing" counterpart under HRS § 286–261(c). In light of the legislative history of HRS § 286–261, *see generally* section III.B.2. of this opinion, *supra*, such a result would be inconsistent with the purposes of HARDLA and, therefore, illogical and absurd. *See Griffin*, 83 Hawai'i at 108 n. 4, 924 P.2d at 1214 n. 4; *Toyomura*, 80 Hawai'i at 20, 904 P.2d at 905; HRS § 1–15(3).

### d. *Option Four*

■■ In light of the foregoing analysis, and reading the statutory language of HRS §§ 286–261(b) and –261(c) in the context of the entire statute in which the sections are embedded, the only construction that most consistently advances HARDLA's purposes is Option Four—*i.e.*, that Act 1 preserved the discretion accorded the Director by Act 188, but in a new and altered form. Pursuant to HRS § 286–261(b), *see supra* note 4, the Director is accorded the discretionary authority to increase the minimum periods of administrative revocation for "non-refusing" arrestees, as enumerated in subsections (b)(1), (b)(2), and (b)(3); correlatively, the Director has always lacked discretion to increase the lifetime administrative revocation imposed by subsection (b)(4) because it is logically impossible to do so, there being no greater available revocation period than "for life." By contrast, the Director has no discretion to vary the periods of administrative revocation for "refusing" arrestees enumerated in HRS § 286–261(c). *See supra* note 4.

However, because the legislature has manifested a clear intent that "refusing" arrestees receive enhanced periods of administrative revocation, as compared to their "non-refusing" counterparts, *see generally* section III.B.2. of this opinion, *supra*, it follows that the Director's discretionary authority to increase the periods of administrative revocation pursuant to HRS § 286–261(b) is

---

**28.** As we noted in section III.B.2.e. of this opinion, *supra*, the legislature intended, even in H.B. No. 1016 (which the Governor vetoed for other reasons), that the Director "consider the refusal to submit to a chemical test as a factor in determining the period of revocation under [HRS § ] 286–261." Hse. Conf. Comm. Rep. No. 31, in 1991 House Journal, at 783; Sen. Conf. Comm. Rep. No. 31, in 1991 Senate Journal, at 755.

"capped" by the mandatory and nondiscretionary periods enumerated in HRS § 286–261(c).[29] Were this not so, the Director could effect an anomaly, namely, that a "non-refusing" arrestee could be subject to a period of administrative revocation greater than his or her "refusing" counterpart, a result clearly inconsistent with HARDLA's purposes.[30]

### 4. *Appellate review and the requisite written record*

■ Now that we have ascertained the parameters of the Director's discretionary authority to vary the periods of administrative revocation enumerated in HRS § 286–261(b), it is possible to describe the written record necessary to facilitate meaningful appellate review of the Director's decisions. *See* section III.A. of this opinion, *supra.* Accordingly, we hold that the following rules apply: In cases where the Director is without discretion, *see* section III.B.3.d. of this opinion, *supra,* the requisite written record would consist of a determination that the criteria set forth in HRS §§ 286–258(d) and –259(e) have been satisfied, *see supra* notes 6 and 7, and a recitation that the arrestee's driving record shows that he or she fell within the class of persons enumerated in HRS §§ 286–261(b)(4) or –261(c). *See supra* note 11. In cases where the Director possesses the discretionary authority to extend the period of administrative revocation, *see* section III.B.3.d. of this opinion, *supra,* but opts *not* to do so, the same written record will suffice. *See supra* note 12. However, where the Director *does* exercise the discretion, accorded by HRS § 286–261(b), to extend the period of administrative revocation, the Director must " 'state on the record [his or her] reasons for determining that [the extended period] is necessary for [the] protection of the public [interest] and ... [to] enter into the record all findings of fact which are necessary to [his or her] decision.' " *State v. Okumura,* 78 Hawai'i 383, 413, 894 P.2d 80, 110 (1995) (quoting *State v. Tamura,* 63 Haw. 636, 639, 633 P.2d 1115, 1118 (1981)) (ellipsis points in original); *see also* notes 12 and 14, *supra.*

### C. *Inasmuch As The Record Supports The Director's Findings That Gray Was A Member Of The Class Of Persons Enumerated In HRS § 286–261(b)(4)—Which Mandates An Administrative License Revocation "For Life" As A Nondiscretionary Matter —, The Director Did Not Exceed His Statutory Authority, Erroneously Interpret The Law, Act In An Arbitrary Or Capricious Manner, Commit An Abuse Of Discretion, Or Make A Determination That Was Unsupported By The Evidence In The Record By Failing To Articulate Any Additional Reasons For Gray's Lifetime Administrative Revocation.*

In his decision and order, and pursuant to HRS §§ 286–258(d) and –259(e), *see supra* notes 6 and 7, the Director entered express written findings, which were supported by the record, that Gray was subject to administrative driver's license revocation under

---

**29.** The same proposition applies to the administrative license revocation of an arrestee (either "non-refusing" or "refusing") under the age of eighteen years, pursuant to HRS § 286–261(b)(5). *See supra* note 4. By the plain language of the subsection, the Director is required to revoke the driver's licenses of such persons either for "the period remaining until the arrestee's eighteenth birthday, or for the appropriate ... period provided in paragraphs (1) to (4) or in subsection (c), whichever is longer." Thus, the enhancements of HRS § 286–261(c) are incorporated into HRS § 286–261(b)(5). Nothing in the statute or its legislative history, however, precludes the Director, under appropriate circumstances, from increasing a "non-refusing" minor's period of administrative revocation up to—but not beyond—the HRS § 286–261(c) "cap."

**30.** For example, a "non-refusing" arrestee whose driving record shows one prior alcohol enforcement contact during the five years preceding the date of his or her arrest, thus placing the arrestee within the ambit of HRS § 286–261(b)(2), could—as a discretionary matter—be subjected to an extended *lifetime* period of administrative revocation, whereas the administrative revocation of an otherwise identically situated "refusing" arrestee would, pursuant to HRS § 286–261(c), be limited to *two years. See supra* note 4. In the argot of statutory construction, such a result would be inconsistent, illogical, and absurd. *See Griffin,* 83 Hawai'i at 108 n. 4, 924 P.2d at 1214 n. 4; *Malufau,* 80 Hawai'i at 137, 906 P.2d at 623; HRS § 1–15(3).

HARDLA. *See* section III.A. of this opinion, *supra.* Moreover, Gray does not dispute that, at the time of his arrest giving rise to this appeal, his driving record showed three or more prior alcohol contacts during the ten years preceding the date of that arrest. *See id.* Accordingly, Gray was a member of the class of persons enumerated in HRS § 286–261(b)(4). *See supra* note 5. That being the case, the Director had no statutory alternative but to impose an administrative license revocation "for life," *see* section III.B.3.d. of this opinion, *supra,* and the written administrative record was not deficient in any respect. *See* section III.B.4. of this opinion, *supra.*

We therefore hold that (1) the Director lacked the discretion to impose any period of administrative revocation upon Gray other than "for life," and (2) the district court was correct in affirming the Director's decision and order.

## IV. *CONCLUSION*

For the foregoing reasons, we affirm the judgment of the district court affirming Gray's lifetime administrative driver's license revocation.