963 P.2d 349

**Peter FRANK, Respondent–Appellant,**

**v.**

**HAWAII PLANING MILL FOUNDATION and Hawaii Planing Mill, Ltd., Petitioners–Appellees, and HM Black, Inc., dba Express Employment, Respondent–Appellee.**

**No. 20343.**

Supreme Court of Hawai'i.

Sept. 15, 1998.

Reconsideration Granted in Part and Opinion Amended Oct. 8, 1998.

---

Dean E. Ochiai (of the Law Office of Dean E. Ochiai) and Thomas E. Cook and Steven Y. Otaguro (of Lyons, Brandt, Cook & Hiramatsu), on the briefs, for petitioners-appellees.

Arthur Y. Park, Laurent J. Remillard, Jr. and John C. McLaren (of Park Park Yu & Remillard), on the briefs, for respondent-appellant.

Andrew L. Pepper and Melani S. Mito (of Marr Jones & Pepper) and Robert C. Rice, pro hac vice (of Rice & Associates, Houston, TX), on the briefs, for amicus curiae National Association of Professional Employer Organizations.

Andrew L. Pepper and Melanie S. Mito (of Marr Jones & Pepper), on the briefs, for amicus curiae Altres, Inc.

Lyle Y. Harada (of Watanabe, IngKawashima) and Charles S. Birenbaum and Robert Spagat, *pro hac vice* (of Thelen Reid & Priest, LLP, of San Francisco, CA), on the briefs, for amicus curiae National Technical Services Association and National Association of Temporary and Staffing Services.

Stephen D. Whittaker and David W. Lacy (of Whittaker & Lacy), on the briefs, for amicus curiae Land–N–Sea Welding, Inc.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Following the Intermediate Court of Appeals' (ICA) disposition of this case by published opinion, filed on May 29, 1998, petitioners-appellees Hawaii Planing Mill Foundation and Hawaii Planing Mill, Ltd. (collectively HPM or statutory employer[1]) petitions this court for a writ of certiorari.[2] HPM argues that the ICA erred in holding that respondent-appellant Peter Frank was permitted to bring a negligence action against HPM, notwithstanding his workers' compensation award.[3]

On July 2, 1998, we granted HPM's petition for a writ of certiorari. For the reasons set forth below, we reverse the decision of the ICA.

## I. BACKGROUND

The facts of this case are undisputed.

Frank was employed by H.M. Black, Inc., d.b.a. Express Employment (Express or original or lending employer[4]), a temporary employment agency, which placed Frank with HPM. Express and HPM memorialized their lending/statutory employer agreement in writing, agreeing, *inter alia*, that the fee paid by HPM to Express covered all expenses, including workers' compensation premiums. In accordance with the agreement, Express paid a workers' compensation insurance premium to Island Insurance Company,

and Frank was duly covered under a policy (the Policy).

Frank began working at the HPM mill site, and, while there, HPM had "the power and authority to dictate the time and place [of Frank's work]; work rules; manner of work; quality; and all other aspects of [Frank's] performance at [HPM Defendants' mill]." *Frank v. Hawaii Planing Mill Foundation*, 88 Hawai'i 465, 468, 967 P.2d 662, 665 (App. May 29, 1998).

On July 19, 1993, while operating a radial saw at HPM's planing mill, Frank suffered permanent injuries to his right hand. He made a workers' compensation claim against Express. Although Frank was awarded benefits under the Policy, he also filed a negligence action against HPM on July 12, 1995. HPM moved for summary judgment on the ground that HPM was Frank's statutory employer, and, therefore, that Frank's exclusive remedy was workers' compensation, thus precluding him from suing HPM in tort. HPM relied on HRS Chapter 386 (entitled "Workers' Compensation Law") to support its contention. Specifically, HPM cited HRS § 386–5 (1993), which provides:

§ 386–5 **Exclusiveness of right to compensation; exception.** The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related

---

1. Although the parties herein, as well as a number of jurisdictions, characterize an employer such as HPM as a "special" employer, we, instead, utilize the more accurate term "statutory" employer throughout the opinion.

2. HRS § 602–59(b)(1993) provides in relevant part:
 The application for writ of certiorari shall tersely state its grounds which must include (1) grave errors of law or fact, or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision,

and the magnitude of such errors or inconsistencies dictating the need for further appeal.

3. In support of the position advanced by statutory employer HPM, the following organizations have submitted *amicus curiae* briefs: The National Association of Professional Employer Organizations; Altres, Inc.; National Technical Services Association; National Association of Temporary and Staffing Services; and Land–N–Sea Welding, Inc.

4. Express is not a party to this appeal.

thereto, in which case a civil action may also be brought.

Frank responded that HPM was not entitled to Chapter 386's immunity because HPM did not satisfy the statutory requirements to be Frank's employer. At issue was whether HPM had "secured [workers'] compensation" insurance in accordance with statutory requirements such that HPM could be classified as Frank's "employer." The circuit court determined that HPM had done so by entering into the contract with Express and, accordingly, granted HPM's motion for partial summary judgment. In its order, the circuit court entered the following findings of fact (FOF) and conclusions of law (COL):

> Defendants [HPM] were the borrowing employer of Plaintiff [Frank] in a borrowed employee context, with Express Employment being the lending employer.

> Under the plain language of HRS § 386-1, in a borrowed employee context, the borrowing employer is considered to be the employer of the employee. However, if the borrowing employer does not secure compensation to the employee as provided for in HRS § 386-121, then the lending employer is considered to be the employer.

> One means for fulfilling the requirement of securing compensation to the employee is for the borrowing employer to directly provide workers' compensation coverage on behalf of the employee. However, Defendants have not provided materials which indicate that they directly provided workers' compensation coverage for Plaintiff.

> On the other hand, consistent with *Ghersi v. Salazar*, 883 P.2d 1352 (S.Ct.Utah 1994), the requirement may be met by Defendants' payment to the lending employer of a fee, a portion of which was used to pay for workers' compensation coverage for Plaintiff. This conclusion is based upon at least the following:

> 1) As a practical matter, Defendants have met the requirements of securing compensation to Plaintiff by indirectly purchasing workers' compensation coverage through the lending employer, Express Employment.

> 2) If an employee is allowed to sue in tort, the borrowing employer in a temporary labor services context, the employee would have more rights than ordinarily received in a typical employer-employee relationship.

> Ordinarily, an employee is allowed workers' compensation benefits, but is not allowed to sue the employer in tort. However, in a temporary labor services context, if the employee can sue the borrowing employer in tort, the employee would be able to both receive workers' compensation benefits from the lending employer and sue the borrowing employer.

> Further, in the temporary labor service context, if the employee suffers a work-related injury, it is most likely that the injury would be one suffered while engaged in services provided to the borrowing employer rather than the lending employer.

> Simply put, if the lending employer were a temporary labor services provider, the employee a carpenter and the borrowing employer a general building contractor, an employee would most likely suffer a work-related injury on a job site performing construction work for the borrowing employer. It is less likely that the employee would suffer a work-related injury while filling out paper work at the lending employer's office.

> This being the case, if an employee can sue a borrowing employer in tort in a temporary labor services context, then, in most instances of work-related injury, the employee would be able to both receive workers' compensation benefits from and sue in tort the employers. Again, this is more than what is contemplated in the ordinary employer-employee relationship.

> 3) *Fonseca v. Pacific Construction Co.*, 54 Haw. 578, 513 P.2d 156 (1973) is distinguishable for at least the following reasons: (a) there the general contractor's liability was considered to be contingent and secondary while in this case the borrowing employers' liability

is primary; (b) by contract, Express Employment assumed whatever obligation Defendants had to provide workers' compensation coverage for Plaintiff; and (c) there were significant indicia of an employer-employee relationship between Plaintiff and Defendants.

On appeal, the ICA reversed, holding that HPM, in failing to directly purchase workers' compensation insurance, had thereby failed to secure workers' compensation insurance in accordance with the scheme delineated in Chapter 386 and thus was not entitled to invoke the scheme's tort immunity provisions. HPM timely petitioned this court for a writ of certiorari and, on July 2, 1998, we granted certiorari to review the ICA's opinion. For the reasons set forth below, we reverse the ICA's opinion.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

■ We review a circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. As we have often articulated: summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.

*Konno v. County of Hawai'i*, 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997) (internal citations, brackets, and quotation marks omitted).

### B. Statutory construction

■ "The interpretation of a statute is a question of law reviewable *de novo*. *Franks v. City & County of Honolulu*, 74 Haw. 328, 334, 843 P.2d 668, 671 (1993).

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. HRS § 1–15(1)(1993). Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (internal citations, quotation marks, brackets, ellipses, and footnote omitted).

■ This court may also consider "the reason and spirit of the law, and the cause which induced the legislature to enact it[ ] . . . to discover its true meaning." *Id.* at 148 n. 15, 931 P.2d at 590 n. 15; HRS § 1–15(2) (1993).

■ Also, this court is bound to construe statutes so as to avoid absurd results. *Keliipuleole v. Wilson*, 85 Hawai'i 217, 222, 941 P.2d 300, 305 (1997). "A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable[,] impracticable . . . inconsisten[t], contradict[ory], and illogical[ ]." *Id.* at 221–22, 941 P.2d at 304–05 (original brackets and citation omitted) (brackets added).

## III. DISCUSSION

■ The sole question presented is whether HPM secured workers' compensation coverage in accordance with the statutory requirements of HRS Chapter 386 so as to immunize itself from suit in tort.

The first relevant statute is HRS § 386–1, wherein the definition of "employee" can be found:

"Employee" means any individual in the employment of another person. Where an employee is loaned or hired out to another person for the purpose of furthering the other person's trade, business, occupation, or profession, the employee shall, beginning with the time when the control of the employee is transferred to the other person and continuing until the control is returned to the original employer, be deemed to be the employee of the other person regardless of whether the employee is paid directly by the other person or by the original employer. *The employee shall be deemed to remain in the sole employment of the original employer if the other person fails to secure compensation to the employee as provided in section 386–121.*

(Emphasis added).

In turn, HRS § 386–121 provides in relevant part:

**§ 386–121 Security for payment of compensation; misdemeanor.** (a) Employers ... shall secure compensation to their employees in one of the following ways:

(1) By insuring and keeping insured the payment of compensation with any stock, mutual, reciprocal, or other insurer authorized to transact the business of workers' compensation insurance in the State[.]

The ICA held that, because HPM did not fulfill its obligations directly and, instead, did so by way of contract, it was not entitled to immunity. The ICA so held, even though it conceded that the rule in nearly every other jurisdiction in the country is in accord with the circuit court's ruling, that is, where the statutory employer pays a fee to the original employer to provide workers' compensation insurance and the original employer complies with the statutory requirements, the statutory employer is immune from suit in tort.[5]

The rule adopted in the vast majority of our sister states is in accord with the policy and purpose of Hawai'i's workers' compensation scheme.

Work[er]'s compensation laws were enacted as a humanitarian measure, to create legal liability without relation to fault. They represent a socially enforced bargain: the employee giving up his right to

---

5. *See, e.g., Rhodes v. Alabama Power Co.,* 599 So.2d 27 (Ala.1992); *Ruble v. Arctic Gen., Inc.,* 598 P.2d 95 (Alaska 1979); *Araiza v. United States West Business Resources, Inc.,* 183 Ariz. 448, 904 P.2d 1272 (Ct.App.1995); *National Union Fire Ins. Co. v. Tri–State Iron and Metal Co.,* 323 Ark. 258, 914 S.W.2d 301 (1996); CAL. LAB. CODE § 3602(d) (West Supp.1998); *Evans v. Webster,* 832 P.2d 951 (Colo.Ct.App.1991); *Porter v. Pathfinder Services, Inc.,* 683 A.2d 40 (Del. 1996); *Thomas v. Hycon, Inc.,* 244 F.Supp. 151 (D.D.C.1965); FLA. STAT. § 440.11(2) (1997); GA. CODE § 34–9–11(c) (1998); *Lines v. Idaho Forest Indus.,* 125 Idaho 462, 872 P.2d 725 (1994); *Crespo v. Weber Stephen Prods. Co.,* 275 Ill.App.3d 638, 212 Ill.Dec. 1, 656 N.E.2d 154 (1995); *Fox v. Contract Beverage Packers, Inc.,* 398 N.E.2d 709 (Ind.Ct.App.1980); *Fletcher v. Apache Hose & Belting Co.,* 519 N.W.2d 839 (Iowa Ct.App.1994); *Hollingsworth v. Fehrs Equip. Co. of K.C.,* 240 Kan. 398, 729 P.2d 1214 (1986); *Snow v. Lenox Int'l,* 662 So.2d 818 (La. Ct.App.1995); ME. REV. STAT. ANN. tit. 39–A, § 104 (1997); *Whitehead v. Safway Steel Prods., Inc.,* 304 Md. 67, 497 A.2d 803 (1985); *Kidder v. Miller–Davis Co.,* 455 Mich. 25, 564 N.W.2d 872 (1997); *Bilotta v. Labor Pool of St. Paul, Inc.,* 321 N.W.2d 888 (Minn.1982); *Northern Elec. Co. v. Phillips,* 660 So.2d 1278 (Miss.1995); *McGuire v. Tenneco, Inc.,* 756 S.W.2d 532 (Mo.1988); *Daniels v. Pamida, Inc.* 251 Neb. 921, 561 N.W.2d 568 (1997); *Antonini v. Hanna Indus.,* 94 Nev. 12, 573 P.2d 1184 (1978); *LaVallie v. Simplex Wire and Cable Co.,* 135 N.H. 692, 609 A.2d 1216 (1992); *Kelly v. Geriatric and Medical Servs., Inc.,* 287 N.J.Super. 567, 671 A.2d 631 (Ct.App. Div.1996); *Vigil v. Digital Equip. Corp.,* 122 N.M. 417, 925 P.2d 883 (App.), cert. denied, 122 N.M. 279, 923 P.2d 1164 (1996); *Thompson v. Grumman Aerospace Corp.,* 78 N.Y.2d 553, 578 N.Y.S.2d 106, 585 N.E.2d 355 (1991); *Brown v. Friday Servs., Inc.* 119 N.C.App. 753, 460 S.E.2d 356 (1995); *Campbell v. Cent. Terminal Warehouse,* 56 Ohio St.2d 173, 383 N.E.2d 135 (1978); *Van Zant v. Peoples Elec. Co-op.,* 900 P.2d 1008 (Okla.Ct.App.1995); *Blacknall v. Westwood Corp.,* 307 Or. 113, 764 P.2d 544 (1988); *English v. Lehigh County Auth.,* 286 Pa.Super. 312, 428 A.2d 1343 (1981); R.I. GEN. LAWS § 28–29–2(6)(iii) (1956); *Day v. Sanders Bros., Inc.,* 315 S.C. 95, 431 S.E.2d 629 (Ct.App.1993); *Goodman v. Sioux Steel Co.,* 475 N.W.2d 563 (S.D.1991); *Bennett v. Mid–South Terminals Corp.,* 660 S.W.2d 799 (Tenn.Ct.App.1983); *Esquivel v. Mapelli Meat Packing Co.,* 932 S.W.2d 612 (Tex.Ct.App.1996); *Walker v. United States General, Inc.* 916 P.2d 903 (Utah 1996); *Candido v. Polymers, Inc.,* 166 Vt. 15, 687 A.2d 476 (1996); *Metro Mach. Corp. v. Mizenko,* 244 Va. 78, 419 S.E.2d 632 (1992); *Novenson v. Spokane Culvert & Fabricating Co.,* 91 Wash.2d 550, 588 P.2d 1174 (1979); *Maynard v. Kenova Chemical Co.,* 626 F.2d 359 (4th Cir.1980); WIS. STAT. ANN. § 102.29(6) (West 1997).

recover common law damages in tort from the employer in exchange for the certainty of a statutory award for all work-connected injuries.

*Kepa v. Hawaii Welding Co. Ltd.*, 56 Haw. 544, 549, 545 P.2d 687, 691 (1976) (citations and original brackets omitted) (brackets added); *see also Mitchell v. State*, 85 Hawai'i 250, 255, 942 P.2d 514, 519 (1997) (the purpose of Chapter 386 is to provide compensation to employees without regard to negligence or causation).

In the instant case, Frank did indeed receive a statutory award for his work-connected injuries. This was made possible because HPM paid a workers' compensation premium—by way of fee paid to Express for that purpose—to ensure Frank's coverage. Accordingly, HPM is entitled to receive its benefit of the socially enforced bargain, that is, tort immunity.

The case relied upon by the circuit court, *Ghersi v. Salazar*, 883 P.2d 1352 (Utah 1994), is particularly illustrative, inasmuch as the court was faced with precisely the same question before us today:

> [W]hether Huish [the statutory employer] is immune from suit ... depends on whether workers' compensation benefits were provided through Huish. Ghersi argues that Huish's paying a fixed fee to a temporary personnel service did not constitute payment of workers' compensation benefits and that Huish itself had to pay the premiums directly to the insurer to be immune from suit. We disagree. Given the economic realities of employee leasing, we hold that the substance of the requirement is met. Huish paid an hourly fee to Adia [the lending employer] with the understanding that a portion of the fee would be used to purchase workers' compensation insurance for the temporary employees. The agreement between Adia and Huish required Adia to carry workers' compensation insurance on all temporary employees placed with Huish. Huish,

through its contract with Adia, provided workers' compensation coverage. Since both Adia and Huish could be liable under the Act, both are protected by it when they comply therewith. Because Huish was a [statutory] employer and paid workers' compensation, Huish cannot be sued by Ghersi for damages.

883 P.2d at 1357–58 (citations omitted). As in *Ghersi*, because HPM was a statutory employer[6] and paid workers' compensation, HPM cannot be sued by Frank for damages.

We note that, in further support of its holding, the ICA cited HRS § 386–9:

> **§ 386–9 Contracting out forbidden.** Except as provided in section 386–78, no contract, rule, regulation or devise whatsoever shall operate to relieve the employer in whole or in part from any liability created by this chapter.

The ICA concluded that this meant that HPM and Express were prohibited from entering the contract provision at issue herein. However, the only relevant case on the provision interprets the statute's progenitor (Act 221) to preclude an employer from shirking its responsibility to secure workers' compensation coverage. The case is *In re Ichijiro Ikoma*, 23 Haw. 291 (1916), which involved the workers' compensation claim of Ichijiro Ikoma, who was an employee of an independent contractor that worked for Oahu Sugar Company (OSC) on land owned by OSC. The court found that OSC was Ikoma's employer for purposes of Act 221. Within the context of the Act's provision prohibiting the contracting out of liability, this court held OSC was not relieved of liability just because the injured worker was covered by an independent contractor. The court further stated:

> If the company, notwithstanding the intent of the act to the contrary, can escape liability in the case at bar by reason of its contract with [the independent contractor], then it may, simply by hiring men by contract to do its business and perform the

---

6. An employer is a statutory employer if: (1) a contract of hire, express or implied, existed between Frank and HPM; (2) the work being done was essentially that of the statutory employer; and (3) the statutory employer had the right to control the details of the work. *See Ghersi*, 883

P.2d at 1356–57 (quoting 1B Arthur Larson, *Workmen's Compensation Law* § 48.00, at 8–434 (1992)). Although this issue was not raised in this case, we note that all three of the elements have been satisfied.

different steps necessary in conducting its business, escape all liability and do that which the act intends should not be done, namely, leave the workman who may be injured in the conduct of its business to look to his immediate employer, whether solvent or insolvent, for compensation.

*Id.* at 300.

Pursuant to the court's discussion in *In re Ichijiro Ikoma*, the prohibition against contracting out liability was intended to prevent an employer from using, for example, an independent contractor agreement, to avoid (1) being deemed the workers' employer, and (2) thereby avoid the resultant obligation to secure workers' compensation benefits.

*Ikoma* is inapposite to the instant case. HPM entered into an agreement whereby it secured workers' compensation coverage for Frank by paying a fee to Express, which in turn paid insurance premiums to Island In-

surance.[7] HPM did not, in any way, contract away its liability; rather, it secured workers' compensation coverage for Frank in accordance with its duty to do so. Because it is undisputed that HPM was Frank's statutory employer and, because HPM secured workers' compensation coverage for Frank, HPM is entitled to tort immunity. Accordingly, the circuit court did not err in granting HPM's motion for summary judgment.

## IV. *CONCLUSION*

For the foregoing reasons, we reverse the ICA's opinion.

---

7. We note also that any concerns that the Special Compensation Fund would be placed at risk are not implicated here because Frank was insured and, in fact, received benefits.