12 P.3d 362

**Lorraine AKIBA, in her official capacity as Director of Labor and Industrial Relations, Appellant–Appellee,**

v.

**Pamela WAIOLENA, Appellee–Appellant.**

No. 22204.

Intermediate Court of Appeals of Hawai'i.

Oct. 5, 2000.

Pamela Waiolena, on the briefs, appellee-appellant *pro se.*

Frances E.H. Lum and Robyn M. Kuwabe, Deputy Attorneys General, on the briefs, for appellant-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by WATANABE, J.

The sole issue in this appeal is whether an individual who has been disqualified from receiving unemployment insurance (UI) benefits for quitting a job without good cause is required to earn sufficient wages from *subsequent* employment in order to reach the "five times the weekly benefit" earnings threshold necessary to *requalify* for UI benefits (requalification earnings threshold) under Hawai'i Revised Statutes (HRS) § 383–30(1) (1993). Appellee–Appellant Pamela Waiolena (Claimant) maintains that she could requalify for UI benefits using the wages she earned from the job she quit, as long as she actually received the wages after quitting.

We disagree with Claimant. Accordingly, we affirm the "Final Judgment" entered by the Circuit Court of the First Circuit (the circuit court) on December 17, 1998, as well as the circuit court's December 14, 1998 "Order Reversing Employment Security Appeals Office's Decision."

## BACKGROUND

After working part-time at a company called 24 Hour Fitness, Inc. (24 Hour Fitness), Claimant voluntarily quit her job on January 25, 1998.[1] Claimant's last two paychecks from 24 Hour Fitness were dated February 6, 1998 and February 20, 1998, respectively. The pay stub for the February 6, 1998 paycheck indicates that Claimant was paid a gross amount of $202.95 for work performed from January 1 to 15, 1998. The pay stub for the February 20, 1998 paycheck shows that 24 Hour Fitness paid Claimant the gross amount of $342.90 for work performed between January 16 to 31, 1998. The total gross income earned by Claimant for work performed for 24 Hour Fitness during January 1998, as reflected by the two pay stubs, was $545.85.

During the period that Claimant was employed at 24 Hour Fitness, she also worked for the State of Hawai'i (the State) Department of Education as a substitute teacher.

For such work, Claimant received paychecks from the State for $504.70 on February 27, 1998; $100.94 on March 13, 1998; and $302.82 on March 31, 1998. These checks totaled $908.46.

After leaving her job at 24 Hour Fitness, Claimant filed an application for UI benefits with the State Department of Labor and Industrial Relations (DLIR). By a March 23, 1998 written decision signed by a DLIR claims examiner and mailed to Claimant on the same date, the DLIR notified Claimant, in relevant part, as follows:

> You are disqualified for benefits beginning January 25, 1998 and continuing until you are paid wages in covered employment equal to not less than 5 times your weekly benefit amount after January 31, 1998.

> [HRS § 383–30(1)] provides that an individual shall be disqualified for benefits if the individual left work voluntarily without good cause. The disqualification is until the individual has worked at least 5 consecutive weeks after the week in which the disqualifying act occurred. Effective October 1, 1989, the disqualification is until the individual has subsequent to the week in which the voluntary separation occurred, been paid wages in covered employment equal to not less than five times the individual's weekly benefit amount as determined under section 383–22(b).

> Per decision dated February 13, 1998, you were disqualified from benefits beginning January 25, 1998, because you voluntarily quit your job without good cause.

> You submitted pay stubs from [24 Hour Fitness], receipts from self employment activity, and pay stubs from [the State]. Although you were paid wages by [24 Hour Fitness] after the disqualification period, this was for work performed prior to the disqualification period, and as such, cannot be used for requalification. You also report income received from self employment activities. As this income is not consid-

---

1. In her Opening Brief, Appellee–Appellant Pamela Waiolena (Claimant) states that her termination from 24 Hour Fitness, Inc. (24 Hour Fitness) "was inappropriately determined to have been a voluntary quit without good cause" and that the issue of whether her termination was a "voluntary quit" was "ignored or dismissed each time that she attempted to have it addressed." However, she also "agrees that this is not an issue currently before this court."

ered covered employment, it cannot be used for requalification.

You currently work for [the State] as a substitute teacher and have earned gross wages of $605.64 to date. Since the gross wages you earned were less than $1420, (which is less than 5 times your weekly benefit amount of $284,) you have not met the requalification provisions of Section 383-30(1). The decision dated February 13, 1998,[2] remains in effect.

(Footnote added.)

On March 27, 1998, Claimant filed an appeal of the DLIR's decision to the Employment Security Appeals Office. On April 22, 1998, an appeals officer reversed the DLIR decision, stating, in relevant part, as follows:

[HRS § 383-30(1)] provides that to calculate qualifying wages, the wages must be paid after the disqualification period. In this case, the disqualification period begins January 25, 1998 and ends January 31, 1998. The record shows claimant received $1,454.31[3] in wages after the disqualification period. Accordingly, [C]laimant meets the requalification provisions of Section 383-30(1), Hawaii Employment Security Law.

. . . .

. . . As of March 31, 1998, [C]laimant meets the requalification provisions.

(Footnote added.)

On April 27, 1998, the DLIR Director (the Director) filed an "Application for Reopening of Appeals Officer's Decision," which was granted. After a rehearing, the appeals officer issued Decision 9800951, dated May 21, 1998, affirming her prior decision. The Director then filed an appeal to the circuit court, which on December 14, 1998, filed an "Order Reversing Employment Security Appeals Office's Decision 9800951."

This appeal by Claimant followed.

**2.** We have been unable to locate this February 13, 1998 decision in the record on appeal.

**3.** In arriving at this figure, the appeals officer included the gross amounts received by Claimant from 24 Hour Fitness ($545.85 total), as reflected in Claimant's February 6 and 20 1998 pay stubs, and the gross amounts received from the State of Hawai'i (the State) for Claimant's work as a substitute teacher for the State Department of

## DISCUSSION

HRS § 383-30 provides that an individual shall be disqualified from receiving UI benefits in certain circumstances. The particular disqualification that we have been asked to construe in this case is contained in subsection (1) of HRS § 383-30, which provides, in pertinent part, as follows:

**Disqualification for benefits.** An individual shall be disqualified for benefits:

(1) Voluntary separation. . . . For any week beginning on and after October 1, 1989, in which the individual has left the individual's work voluntarily without good cause, and continuing until the individual has, subsequent to the week in which the voluntary separation occurred, been paid wages in covered employment equal to not less than five times the individual's weekly benefit amount as determined under section 383-22(b).

Construction of a statute is a question of law that we review on appeal *de novo. Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998). The Hawai'i Supreme Court has instructed that in construing a statute,

we must, of necessity, observe some established rules of statutory construction.

. . . [O]ur foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncer-

Education (DOE), as reflected in Claimant's three pay stubs (dated February 27, 1998, March 13, 1998, and March 31, 1998). The record on appeal indicates that Claimant also received a check from the State, dated April 15, 1998, for work performed for the DOE. However, Claimant did not want that check amount included in the calculation.

tainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. HRS § 1-15(1)(1993). Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray v. Administrative Dir. of Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (brackets, ellipses, footnote, and quotation marks omitted) (quoting *State v. Toyomura*, 80 Hawai'i 8, 18-19, 904 P.2d 893, 903-04 (1995)). Additionally, we are required to observe the general requirement that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1-16 (1993). We "may also consider 'the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.'" *Frank v. Hawaii Planing Mill Foundation*, 88 Hawai'i 140, 144, 963 P.2d 349, 353 (1998) (brackets and ellipsis omitted) (quoting *Gray*, 84 Hawai'i at 148 n. 15, 931 P.2d at

590 n. 15; HRS § 1-15(2) (1993)). However, we are "bound to construe statutes so as to avoid absurd results. 'A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable, impracticable ... inconsistent, contradictory, and illogical.'" *Id.* at 144, 963 P.2d at 353 (citation and brackets omitted) (quoting *Keliipuleole v. Wilson*, 85 Hawai'i 217, 221-22, 941 P.2d 300, 304-05 (1997)). *See also* HRS § 1-15(3) (1993) ("Every construction which leads to an absurdity shall be rejected.").

**A.**

Applying the foregoing principles to the legal issue presented, we turn first to an examination of the literal language of HRS § 383-30(1) since, if the statute is clear on its face, we need not resort to other principles of statutory construction in interpreting it.

HRS § 383-30(1) provides that for any week beginning after October 1, 1989, an individual who has voluntarily left his or her employment without good cause is disqualified from receiving UI benefits until "subsequent to the week in which the voluntary separation occurred, [the individual has] been paid *wages in covered employment* equal to not less than five times the individual's weekly benefit amount as determined under section 383-22(b)." [4] (Emphasis added.)

---

4. Hawai'i Revised Statutes (HRS) § 383-22(b) (1993) establishes the method for computing the amount of unemployment insurance benefits that a qualified individual is entitled to receive. The portion of the foregoing statute which is applicable to Claimant reads as follows:

**Weekly benefit amount; computation, minimum and maximum. ...**

(b).... In the case of an individual whose benefit year begins after January 4, 1992, the individual's weekly benefit amount shall be, except as otherwise provided in this section, an amount equal to one twenty-first of the individual's total wages for insured work paid during the calendar quarter of the individual's base period in which such total wages were highest. The weekly benefit amount, if not a multiple of $1, shall be computed to the next higher multiple of $1. If an individual's weekly benefit amount is less than $5, it shall be $5. The maximum weekly benefit amount shall be determined annually as follows: On or before November 30 of each year the total remuneration paid by employers, as reported on contri-

bution reports submitted on or before such date, with respect to all employment during the four consecutive calendar quarters ending on June 30 of the year shall be divided by the average monthly number of individuals performing services in the employment during the same four calendar quarters as reported on the contribution reports. The amount thus obtained shall be divided by fifty-two and the average weekly wage (rounded to the nearest cent) thus determined.... For benefit years beginning January 1, 1992, and thereafter, seventy per cent of the average weekly wage shall constitute the maximum weekly benefit amount and shall apply to all claims for benefits filed by an individual qualifying for payment at the maximum weekly benefit amount in the benefit year commencing on or after the first day of the calendar year immediately following the determination of the maximum weekly benefit amount. The maximum weekly benefit amount, if not a multiple of $1, shall be computed to the next higher multiple of $1.

The Director argues that HRS § 383–30(1) literally and clearly requires that

Claimant had to be *"in* covered employment" subsequent to her voluntary separation and had to be "paid wages" for that employment subsequent to her voluntary separation. Claimant was not *in* employment with [24 Hour Fitness] subsequent to her voluntary separation. Consequently, wages from [24 Hour Fitness] cannot be used to requalify Claimant, according to the plain statutory language.

(Bold and italics in original.) On the other hand, Claimant argues that the language of HRS § 383–30(1)

is implicit and clear. It does not state the source of the income, nor the time period in which it must be earned. It states only that it is to be "paid wages in covered

| (Column A) High Quarter Wages | (Column B) Basic Weekly Benefit | (Column C) Minimum Qualifying Wages | (Column D) Maximum Total Benefits in Benefit Year |
|---|---|---|---|
| $ 37.50— 125.00 | $ 5.00 | $ 150.00 | $ 130.00 |
| 125.01— 150.00 | 6.00 | 180.00 | 156.00 |
| 150.01— 175.00 | 7.00 | 210.00 | 182.00 |
| 175.01— 200.00 | 8.00 | 240.00 | 208.00 |
| 200.01— 225.00 | 9.00 | 270.00 | 234.00 |
| 225.01— 250.00 | 10.00 | 300.00 | 260.00 |
| 250.01— 275.00 | 11.00 | 330.00 | 286.00 |
| 275.01— 300.00 | 12.00 | 360.00 | 312.00 |
| 300.01— 325.00 | 13.00 | 390.00 | 338.00 |
| 325.01— 350.00 | 14.00 | 420.00 | 364.00 |
| 350.01— 375.00 | 15.00 | 450.00 | 390.00 |
| 375.01— 400.00 | 16.00 | 480.00 | 416.00 |
| 400.01— 425.00 | 17.00 | 510.00 | 442.00 |
| 425.01— 450.00 | 18.00 | 540.00 | 468.00 |
| 450.01— 475.00 | 19.00 | 570.00 | 494.00 |
| 475.01— 500.00 | 20.00 | 600.00 | 520.00 |
| 500.01— 525.00 | 21.00 | 630.00 | 546.00 |
| 525.01— 550.00 | 22.00 | 660.00 | 572.00 |
| 550.01— 575.00 | 23.00 | 690.00 | 598.00 |
| 575.01— 600.00 | 24.00 | 720.00 | 624.00 |
| 600.01— 625.00 | 25.00 | 750.00 | 650.00 |
| 625.01— 650.00 | 26.00 | 780.00 | 676.00 |
| 650.01— 675.00 | 27.00 | 810.00 | 702.00 |
| 675.01— 700.00 | 28.00 | 840.00 | 728.00 |
| 700.01— 725.00 | 29.00 | 870.00 | 754.00 |
| 725.01— 750.00 | 30.00 | 900.00 | 780.00 |
| 750.01— 775.00 | 31.00 | 930.00 | 806.00 |
| 775.01— 800.00 | 32.00 | 960.00 | 832.00 |
| 800.01— 825.00 | 33.00 | 990.00 | 858.00 |
| 825.01— 850.00 | 4.00 | 1020.00 | 884.00 |
| 850.01— 875.00 | 35.00 | 1050.00 | 910.00 |
| 875.01— 900.00 | 36.00 | 1080.00 | 936.00 |
| 900.01— 925.00 | 37.00 | 1110.00 | 962.00 |
| 925.01— 950.00 | 38.00 | 1140.00 | 988.00 |
| 950.01— 975.00 | 39.00 | 1170.00 | 1014.00 |
| 975.01—1000.00 | 40.00 | 1200.00 | 1040.00 |
| 1000.01—1025.00 | 41.00 | 1230.00 | 1066.00 |
| 1025.01—1050.00 | 42.00 | 1260.00 | 1092.00 |
| 1050.01—1075.00 | 43.00 | 1290.00 | 1118.00 |
| 1075.01—1100.00 | 44.00 | 1320.00 | 1144.00 |
| 1100.01—1125.00 | 45.00 | 1350.00 | 1170.00 |
| 1125.01—1150.00 | 46.00 | 1380.00 | 1196.00 |
| 1150.01—1175.00 | 47.00 | 1410.00 | 1222.00 |
| 1175.01—1200.00 | 48.00 | 1440.00 | 1248.00 |
| 1200.01—1225.00 | 49.00 | 1470.00 | 1274.00 |
| 1225.01—1250.00 | 50.00 | 1500.00 | 1300.00 |
| 1250.01—1275.00 | 51.00 | 1530.00 | 1326.00 |
| 1275.01—1300.00 | 52.00 | 1560.00 | 1352.00 |
| 1300.01—1325.00 | 53.00 | 1590.00 | 1378.00 |
| 1325.01—1350.00 | 54.00 | 1620.00 | 1404.00 |
| 1350.01—and over | 55.00 | 1650.00 | 1430.00 |

employment equal to not less than five times the individual's weekly benefit *amount*.["]

As such, [Claimant] was clearly entitled to requalification of benefits for wages paid subsequent to the week in which the voluntary separation occurred.

(Citation omitted, italics in original.)

The fact that the Director and Claimant disagree as to the interpretation of HRS § 383–30(1), and the fact that the claims examiner, appeals officer, and the circuit court also came to differing interpretations of the statute suggest quite convincingly that the statute cannot be interpreted primarily from the literal language contained therein. We note, moreover, that the term "covered employment" is not defined in HRS chapter 383. Furthermore, the phrase "in covered employment" follows the words "be paid wages" without any intervening punctuation mark, such as a comma. Because of the placement of the phrase, it is unclear to us whether Claimant was required to be working "in covered employment" when she received the wages, whether the wages had to be earned by Claimant "in covered employment," or whether the phrase describes the type of wages, i.e., "wages in covered employment," that Claimant had to earn in order to requalify for UI benefits. Because the placement of the phrase "in covered employment" makes it difficult to determine what the disqualification provision encompasses, we conclude that the statute is ambiguous.

## B.

■ Where a statute is ambiguous, we may resort to extrinsic aids such as legislative history to determine the legislature's intent in enacting the statute. *Frank*, 88 Hawai'i at 144, 963 P.2d at 353. Our review of the legislative history of HRS § 383–30(1) indicates that the requalification earnings threshold was first incorporated into the statute in 1986. Prior to that time, the statutory provision that is now codified in HRS § 383–30(1) went through a number of changes.

HRS § 383–30(1) was formerly codified as Revised Laws of Hawai'i (RLH) § 93–29(a) (1955), which stated, in pertinent part:

**Disqualification for benefits.** An individual shall be disqualified for benefits:

(a) Voluntary separation. For any week in which he [or she] has left his [or her] work voluntarily without good cause and for not less than two or more than seven consecutive weeks of unemployment which immediately follow such week, as determined according to the circumstances in each case.

When the laws contained in the RLH 1955 and the laws subsequently adopted by the territorial and state legislatures through the 1967 regular session were recodified as the HRS in 1968, RLH § 93–29 (1955) was renumbered as HRS § 383–30 (1968). HRS § 383–30 was later substantively amended by Act 157 of the Session Laws of Hawai'i of 1976 to read as follows:

**Disqualification for benefits.** An individual shall be disqualified for benefits:

(1) Voluntary separation. For any week in which he [or she] has left his [or her] work voluntarily without good cause, and continuing until he [or she] has, subsequent to the week in which the voluntary separation occurred, been employed for at least five consecutive weeks of employment. For the purposes of this subsection, "weeks of employment" means all those weeks within each of which the individual has performed services in employment for not less than two days or four hours per week, for one or more employers, whether or not such employers are subject to this chapter.

1976 Haw. Sess. L. Act 157, § 2 at 292. Act 157 had its genesis in Senate Bill No. 2326–76, entitled "A Bill for an Act Relating to Employment Security." In explaining the purposes of Senate Bill No. 2326, the Senate Human Resources Committee stated as follows:

The purpose of this bill is to make several amendments to the Unemployment Compensation Law to ensure that benefits are paid only to those claimants who are involuntarily unemployed through no fault

of their own, to provide the means to detect and prevent fraudulent claims, and to provide adequate financing of the Unemployment Insurance Trust Fund to restore its solvency.

The specific proposals are:

. . . .

2. To amend the provisions for disqualification due to voluntary separation from employment without good cause (Section 383–30(1)), discharge or suspension for misconduct (Section 383–30(2)), and failure without good cause to apply for or accept suitable work (Section 383–30(3)) in order *to require an individual to requalify for benefits by becoming employed for a minimum of five consecutive weeks subsequent to the disqualification,* and then being separated from such subsequent employment under non-disqualifying conditions. Under the present law, an individual disqualified for any of the aforementioned reasons may not draw benefits for three to eight weeks; however, after serving his [or her] disqualification period, the individual may then draw his [or her] full benefit entitlement, if he [or she] is otherwise eligible to do so. *The intent of the law is to pay benefits to workers who are involuntarily unemployed. Under the proposed amendment, an individual who caused his [or her] own unemployment would not draw benefits until he [or she] has amply demonstrated his [or her] attachment to the labor force by working subsequent to his [or her] voluntary unemployment.*

Sen. Stand. Comm. Rep. No. 352–76, in 1976 Senate Journal, at 1037–38 (emphases added). The Majority Report of the House Labor and Public Employment Committee noted that the voluntary separation disqualification provision was being amended to require "unemployment insurance claimants to work five consecutive weeks in order to requalify for benefits if they voluntarily quit their jobs without good cause, were suspended or fired for misconduct or failed to apply for suitable work" to "correct weaknesses in benefit provisions." Hse. Stand. Comm. Rep. No. 776–76, in 1976 House Journal, at 1647.

Thus, the 1976 amendment to HRS § 383–30(1) signified a legislative intent to close a loophole in the UI benefits law which allowed individuals to voluntarily quit their jobs without good cause and then begin collecting UI benefits after waiting out a brief disqualification period. However, even after the 1976 amendment, HRS § 383–30(1) allowed an individual to requalify for UI benefits as long as the individual was subsequently employed "for at least five consecutive weeks of employment" for "one or more employers, *whether or not such employers are subject to this chapter.*" (Emphasis added.) Therefore, even if a subsequent employer of a claimant for UI benefits was not subject to HRS chapter 383 and thus did not make monetary contributions into the State UI compensation fund, the claimant was still entitled to collect UI benefits after working for such an employer for five consecutive weeks.

In 1986, the legislature enacted Act 32, which amended HRS § 383–30(1) to add the following language:

For any week beginning on and after October 1, 1989, in which the individual has left the individual's work voluntarily without good cause, and continuing until he [or she] has, subsequent to the week in which the voluntary separation occurred, *been paid wages in covered employment equal to not less than five times the individual's weekly benefit amount* as determined under section 383–22(b).

1986 Haw. Sess. L. Act 32, § 3 at 32 (emphasis added). Thus, effective October 1, 1989, a minimum earnings "in covered employment" threshold was substituted for the "five consecutive weeks of employment" requirement to requalify for UI benefits after a voluntary separation without good cause. Act 32 had its origin in House Bill No. 2008–86. In explaining the reasons for the bill, the Senate Labor and Employment Committee reported, in part:

The purpose of this bill is to require employers to submit detailed wage data on a quarterly basis for the [UI] Division starting July, 1988.

Currently, employers are required to report only total wages for all employees on a quarterly basis and detailed wage data

for each employee only upon the job separation of an employee. At the present time, Hawaii is one of only nine states that does not have a quarterly wage record system in operation.

Under this bill, five sections of the Hawaii Employment Security Law are amended to:

. . . .

> 2) *Substitute wages earned for weeks of employment for* monetary qualification and *requalification purposes* to relieve employers of the burden of providing additional information on the quarterly wage reports. The current law provides that an individual must be employed for at least fourteen weeks to establish a valid UI claim, and be reemployed for five consecutive weeks to requalify for benefits following a disqualification. This bill would eliminate the qualifying requirement that the claimant have fourteen weeks of employment in the base period and instead require the claimant to have earned at least fourteen times his [or her] weekly benefit amount and worked in at least two different quarters of the base period. *To requalify after a disqualification, a claimant would have to earn at least five times his [or her] benefit amount* instead of working for five consecutive weeks, as is required now.

Sen. Stand. Comm. Rep. No. 722–86, in 1986 Senate Journal, at 1111 (emphases added). The legislative history of HRS § 383–30(1) thus evinces a clear legislative intent that an individual who voluntarily quits his or her employment and is thus unemployed by choice must *earn* a minimum threshold amount *subsequent* to terminating the employment in order to requalify for UI benefits.

The legislative committee reports on House Bill No. 2008–86 do not explain what the legislature's intent was in requiring that a claimant be "paid wages in *covered employment*" in order to requalify for UI benefits.

---

**5.** HRS § 383–2 (1993) generally defines "employment," subject to HRS §§ 383–3 to 383–9, as meaning "service, including service in interstate

(Emphasis added.) However, as noted previously, prior to the passage of Act 32, HRS § 383–30(1) provided that an individual could requalify for UI benefits after a voluntary separation without good cause as long as the individual was employed for "at least five consecutive weeks of employment." Moreover, "weeks of employment" was defined as "all those weeks within which each of which the individual has performed services in employment for not less than two days or four hours per week, for one or more employers, *whether or not such employers are subject to this chapter.*" (Emphasis added.) The requirement that effective October 1, 1989, wages be earned in "covered employment" in order for a claimant to requalify for UI benefits, when read in conjunction with the pre-October 1, 1992 requirement that employment need not be for "employers . . . subject to this chapter," seems to reflect a clear legislative intent that a claimant must earn wages from an employer subject to chapter 383 in order to requalify for UI benefits after October 1, 1992.

### C.

HRS § 383–30(1) is part of chapter 383, the Hawai'i Employment Security Law. In interpreting HRS § 383–30(1), therefore, we must construe it in conjunction with the other sections of HRS chapter 383.

HRS § 383–29 (Supp.1999), which establishes the requirements to be eligible for unemployment benefits, provides, in relevant part, as follows:

> **Eligibility for benefits.** (a) An unemployed individual shall be eligible to receive benefits with respect to any week only if the department finds that:
>
> . . . .
>
> (5) Wages for insured work; weeks of employment.
>
> . . . .
>
> (C) In the case of an individual whose benefit year begins after January 4, 1992, the individual has been employed as defined in section 383–2[ [5]] and has

commerce, performed for wages or under any contract of hire, written or oral, express or im-

been paid wages for such insured work during the individual's base period[ [6] ] in an amount equal to not less than twenty-six times the individual's weekly benefit amount, as determined under section 383–22(b), and the individual has been paid wages for insured work during at least two quarters of the individual's base period[ [7] ]; *provided that no otherwise eligible individual who established a prior benefit year under this chapter or the unemployment compensation law of any other state, shall be eligible to receive benefits in a succeeding benefit year until, during the period following the beginning of the prior benefit year, that individual worked in covered employment for which wages were paid in an amount equal to at least five times the weekly benefit amount established for that individual in the succeeding benefit year.*

HRS § 383–29(a)(5)(C) (emphasis and footnotes added).

■ When HRS § 383–30(1) is construed in conjunction with HRS § 383–29, the statutory scheme for qualification, disqualification, and requalification of unemployment benefits becomes more readily apparent. According to HRS § 383–29(a)(5)(C), one of the requirements for eligibility for UI benefits is that "the individual has been employed ... and has been paid wages for such *insured* work during the individual's base period...." (Emphasis added.) However, HRS § 383–29(a)(5)(C), similar to HRS § 383–30, disqualifies an individual who previously received UI benefits in a benefit year from receiving UI benefits in a subsequent benefit year until "that individual worked in *covered employment* for which wages were paid in an amount equal to at least five times the weekly benefit amount established for that individual in the succeeding benefit year." (Emphasis added.) Construing HRS §§ 383–29 and 383–30 together, it is clear that in order to requalify for UI benefits after a voluntary separation without good cause, an individual must work for a subsequent employer who is subject to HRS chapter 383 and be paid wages from the subsequent employer in an amount sufficient to meet the requalification earnings threshold.

■ If we were to interpret HRS § 383–30(1) as Claimant proposes, then the February paychecks from 24 Hour Fitness that Claimant received for work performed in January could be included in determining both her eligibility for and the amount of her UI benefits, as well as her eligibility to requalify for UI benefits. We do not believe that the legislature intended such a result.

## D.

Finally, we agree with the circuit court that construing HRS § 383–30(1) as Claimant urges "would produce an absurd result of allowing claimants to requalify for unemployment benefits without demonstrating the requisite attachment to the work force." In this case, for example, if 24 Hour Fitness had paid Claimant a final check for work performed in January 1998 on the day she terminated her employment, this case would not be here, under Claimant's construction of

---

plied." HRS § 383–2(a). HRS § 383–2 also sets forth several situations which are included in the term "employment."

6. HRS § 383–1 (1993) defines "[b]ase period," "[w]ith respect to benefit years beginning on and after October 1, 1989," as meaning "the first four of the last five completed calendar quarters preceding the first day of an individual's benefit year."

7. HRS § 383–1 defines "[b]enefit year[,]" with respect to an individual, as meaning

the one-year period beginning with the first day of the first week with respect to which the individual first files a valid claim for benefits and thereafter the one-year period beginning with the first day of the first week with respect to which the individual next files a valid claim for benefits after the termination of the individual's last preceding benefit year. Any claim for benefits made in accordance with section 383–32 shall be deemed a "valid claim" for the purpose of this paragraph if the individual has satisfied the conditions required under section 383–29(a)(5). Nothing in sections 383–29 and 383–30, except section 383–29(a)(5), shall affect the filing of a "valid claim" or the establishment of a "benefit year". For the purposes of this paragraph a week with respect to which an individual files a valid claim shall be deemed to be "in", "within", or "during" that benefit year which includes the greater part of such week.

HRS § 383–30(1). We do not believe the legislature ever intended that a claimant's requalification for UI benefits after a voluntary termination without good cause would turn on the fortuitous timing of the former employer's payment of the claimant's previously earned wages. Moreover, it would violate the reason for and spirit of HRS chapter 383 if a claimant could requalify for UI benefits without subsequently working for an employer covered by HRS chapter 383, just because the claimant received a final paycheck(s) from an employer whom the claimant voluntarily separated from, for previously earned wages in an amount sufficient to meet the requalification earnings threshold.

Affirmed.